[704 NYS2d 550]

Francisco Dilluvio et al., Appellants, v City of New York, Respondent.

First Department, March 2, 2000

APPEARANCES OF COUNSEL

*Alexander J. Wulwick* of counsel, New York City (*Roura & Melamed,* attorneys), for appellants.

*Joseph F.X. Savona* of counsel, New York City (*William T. Ryan* and *Robin Mary Heaney* on the brief; *Savona & Scully,* attorneys), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

The central question presented by this appeal is whether plaintiff,* who fell from the back of a pickup truck while he was being driven to a location where he would place cones on a roadway to block traffic, is entitled to the protection of Labor Law § 240 (1). As plaintiff was not subject to any exceptionally dangerous condition related to being on an elevated work site, he was not exposed to the type of risks covered by the Labor Law. We also conclude that the work plaintiff was doing did not constitute work on a "structure" as contemplated by the statute. Accordingly, plaintiff's Labor Law § 240 (1) claim was properly dismissed.

Beaver Concrete Construction Co., Inc. (Beaver) was engaged in a road construction project on the Hutchinson River Parkway. The project involved removing the concrete surface of a portion of the parkway that passed over an Amtrak train line. Removal of the concrete was to be followed by an inspection of the steel support beams after which the roadway was to be repaved with concrete. The project also called for removal and replacement of the asphalt roadway for an area extending 120 feet on either side of the overpass. In order to safely conduct the operation, the right lane of the parkway had to be closed. The determination as to how to conduct the lane closure was made jointly by plaintiff, as the foreman of the project, and a superintendent.

The first step in the lane closure process was to place a flashing arrow in the roadway directing cars to move to the left. The next step was for plaintiff and a fellow employee named George to place barrels on the ground every 20 or 25 feet beginning from the flashing arrow. Plaintiff and George, while proceeding on foot, placed the barrels for a distance of as much as 150 feet until they reached a boom truck that was positioned further down the road. They then walked back to the flashing arrow where a pickup truck (pickup) was stationed.

---

* All references to plaintiff are to Francisco Dilluvio.

The last step in the lane-closing process was for cones to be placed every 20 feet for a distance of 500 feet beyond the boom truck. The pickup was to be utilized in placing the cones. In this part of the operation, plaintiff was to sit on the open tailgate of the pickup, which was only three feet above the ground, and pass the cones to George, who would walk behind the pickup and place the cones on the pavement. Lorenzo Rizzo, the owner of Beaver, was to drive the truck.

In order to return to the boom truck, both plaintiff and George climbed into the back of the pickup for Rizzo to drive them just past the boom truck where they would commence placing the cones. Rizzo, in driving to the boom truck, pulled into the left lane. As the pickup began to move, it lurched forward causing plaintiff to fall from the tailgate of the pickup onto the pavement and injure himself. Thus, plaintiff never arrived at the location where he was to place the cones.

Plaintiff commenced this action alleging that defendant was liable pursuant to Labor Law § 240 (1). This statute provides in relevant part that "[a]ll contractors and owners and their agents * * * in the erection, demolition, repairing, [or] altering * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

It is plaintiff's contention that the work he was performing was within the scope of the statute because he was working on an "elevated platform," i.e., the back of a pickup, and that defendant, as the owner of the parkway where he was working, failed to provide him with any safety devices to protect him from falling from that platform. Moreover, it is contended that the work he was doing falls within the purview of the statute because it was incidental to the repair of a "structure," namely, an overpass, alternatively referred to as a bridge. We reject both contentions.

Labor Law § 240 (1) was enacted "in recognition of the exceptionally dangerous conditions posed by elevation differentials at work sites * * * for workers laboring under unique gravity-related hazards" (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491). "The extraordinary protections of [the statute] extend only to a narrow class of special hazards, and do 'not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity' " (*Nieves v Five*

*Boro Air Conditioning & Refrig. Corp.*, 93 NY2d 914, 915-916, quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [emphasis in original]). In determining whether the statute applies, the question is whether there is "a significant risk inherent in the particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514).

Here, it can hardly be debated that there was no "exceptionally dangerous condition" or "significant risk" posed by the mere elevation differential between the tailgate of the pickup upon which plaintiff was seated and the ground, which, as noted, was only three feet (*cf., Tillman v Triou's Custom Homes*, 253 AD2d 254; *DePuy v Sibley, Lindsay & Curr Co.*, 225 AD2d 1069; *Gaul v Motorola, Inc.*, 216 AD2d 879; *Colopy v William C. McCombs, Inc.*, 203 AD2d 920; *Cipolla v Flickinger Co.*, 172 AD2d 1064). In fact, since it is readily inferable from the record that plaintiff's legs were dangling from the tailgate, it would appear that the bottom of his feet were barely off the ground. In regard to whether the elevation posed a significant risk, *Tillman v Triou's Custom Homes* (*supra*) is particularly instructive.

In *Tillman*, the plaintiff was unloading cement blocks from the back of a flatbed truck. As he was lowering a unit of blocks with a boom, the truck tipped, and the plaintiff fell 4½ feet from the truck to the ground. The Court held that there was no "exceptionally dangerous condition posed by the elevation differential between the flatbed portion of the truck and the ground, and there was no significant risk inherent in the particular task plaintiff was performing because of the relative elevation at which he was performing that task [citations omitted]" (*supra,* at 257).

When the facts of the instant case, which involved an elevation of only three feet or less, are contrasted with *Tillman*, an even more compelling basis is presented for concluding that plaintiff was not exposed to any exceptionally dangerous condition by virtue of height (*see also, DePuy v Sibley, Lindsay & Curr Co., supra* [plaintiff fell approximately three feet from bed of truck while unloading cabinet]; *Gaul v Motorola, Inc., supra* [plaintiff tripped and fell from back of trailer]; *Colopy v William C. McCombs, Inc., supra* [plaintiff fell from truck when struck by boom]; *Cipolla v Flickinger Co., supra* [plaintiff injured when he fell from truck's running board about 1½ feet from the ground]).

Further analysis of the risk plaintiff faced shows that, while he was seated on the back of the pickup, he was not exposed to any particular danger referable to height but rather to motion. Danger presented itself only when the pickup began moving. Hence, the "significant risk" in this case did not arise from a height-related danger per se, but a danger related to forward motion irrespective of height. This dichotomy in the source of the danger is of pivotal importance in evaluating a case of this type. Dangers that are premised on height invoke section 240 (1), while those that are normally attendant to riding in a moving vehicle do not (cf., *Dankulich v Felchar Mfg. Corp.*, 247 AD2d 660; *Salzler v New York Tel. Co.*, 192 AD2d 1104). The distinction is particularly telling here since plaintiff and his co-worker were both seated in the back of the pickup simply being transported the short distance to the area where they would begin placing cones. Hence, at the time of the accident, the pickup was not even being used as an elevated work platform, but merely as a mode of transportation.

It is of course obvious that a risk of injury may be increased when elevation is accompanied by velocity or other combinations of danger. However, for section 240 (1) to apply there must be some risk that, in the first instance, emanates from the height at which the work is performed. The necessity of identifying the elevation-related risk where there are multiple sources of danger is illustrated by *Gordon v Eastern Ry. Supply* (82 NY2d 555).

In *Gordon* (*supra*), the plaintiff was injured while cleaning the exterior of a railroad car. The accident happened when the plaintiff, on the fourth or fifth step of a ladder, activated the trigger of a sandblaster he was using. As he did so, the ladder tipped, causing him to fall to the ground and lose control of the sandblaster, which continued to spray him with sand after he hit the ground. It was the defendant's contention that the plaintiff failed to state a section 240 (1) cause of action because he was not injured from the fall to the ground or from a failure to provide a safe ladder, but was injured as a result of a defective sandblaster (*supra,* at 560, 562).

The Court, in concluding that the plaintiff's accident was within the purview of section 240 (1), stated: "[P]laintiff was working on a ladder and thus was subject to an 'elevation-related risk'. The ladder did not prevent plaintiff from falling; thus the 'core' objective of section 240 (1) was not met." (*Supra,* at 561.) Thus, *Gordon* makes clear that the risk to which the plaintiff there was exposed was, in the first instance, height-

related because he was working on a ladder, a device specifically within the contemplation of section 240 (1), irrespective of his use of a sandblaster.

In contrast, to accept the reasoning urged by the dissent, that the risk plaintiff faced while being transported on the back of the pickup was elevation related, would result in an anomalous analytical formulation where height, and its consequent danger, is a function of velocity. Under this formulation, an activity that does not expose a worker to any danger vis-à-vis height, suddenly transmutes itself into such a danger, as speed enters the equation. While such a formulation may have a certain attraction in the relativistic world of Einsteinian physics, it is not helpful in determining the dangers that the Legislature sought to protect against with its enactment of section 240 (1).

The dissent nevertheless appears to adopt just such a formulation, pointing to *Curley v Gateway Communications* (250 AD2d 888 [3d Dept]), *Monroe v Bardin* (249 AD2d 650 [3d Dept]), *Orr v Christa Constr.* (206 AD2d 881 [4th Dept]), and *Cox v LaBarge Bros. Co.* ([appeal No. 2] 154 AD2d 947, *lv dismissed* 75 NY2d 808 [4th Dept]). These cases are, however, inapposite. Contrary to the matter at bar, it appears that the workers in each of these cases were exposed to a significant danger by virtue of the height at which they were working, irrespective of any danger presented by velocity (*Curley v Gateway Communications, supra* [plaintiff standing on top of pipe that was on flatbed truck]; *Monroe v Bardin, supra* [plaintiff injured when he fell 12 feet from bed of truck]; *Orr v Christa Constr., supra* [fall from flatbed trailer]; *Cox v LaBarge Bros. Co., supra* [fall from top tier of gas pipes that were stacked upon flatbed truck]).

With regard to the dissent's reliance upon cases such as *Binetti v MK West St. Co.* (239 AD2d 214 [fall from bottom rung of ladder]) and *Casabianca v Port Auth.* (237 AD2d 112 [fall from scaffold two feet off the ground]), it may be true that falls from low heights, as in *Binetti* and *Casabianca*, have been found to be within the purview of section 240 (1). At the same time, falls from greater heights have been found to be outside the scope of the statute (*see, e.g., Tillman v Triou's Custom Homes, supra*; *DePuy v Sibley, Lindsay & Curr Co., supra*). The varying decisions, however, are perfectly reconcilable when cognizance is given to one observation: whether a danger is within the contemplation of Labor Law § 240 (1) cannot be measured exclusively in terms of inches, but must be mea-

sured in terms of legislative intent. Here, there is simply no indication that the Legislature enacted section 240 (1) to protect a worker being driven in a pickup to the location where he will be performing his work.

Putting aside the foregoing analysis, there is a further reason why Labor Law § 240 (1) is not implicated. Section 240 (1), by its terms, requires that the enumerated activities, i.e., repair work, be performed with reference to a "building or structure" (*see, Lombardi v Stout*, 80 NY2d 290, 296). The work plaintiff was doing did not constitute work on a structure within the meaning of the statute.

Stripping the construction project to its essentials, what Beaver was doing here was repaving a portion of the Hutchinson River Parkway. Repaving a parkway at grade does not constitute work on a structure for purposes of Labor Law § 240 (1) (*Spears v State of New York*, 266 AD2d 898; *Matter of Dillon v State of New York*, 201 AD2d 793; *Siragusa v State of New York*, 117 AD2d 986, *lv denied* 68 NY2d 602). Seeking to avoid application of this principle, plaintiff contends that, because the roadway included an overpass or bridge, this road repaving operation was in reality a bridge renovation project, and that such a project constitutes work on a structure for purposes of the statute.

We recognize that generally work on an overpass or bridge would be regarded as work on a structure under the statute (*see, Lombardi v Stout, supra*; *Dougherty v State of New York*, 113 AD2d 983, 985). However, whether a worker is repaving the roadway of an overpass or repaving a roadway on solid ground, the nature of the work is the same. In either event, the work is performed at grade and there is no necessity for a scaffold, ladder, or any other elevation-related equipment. Moreover, when considered in the context of plaintiff's fall from the tailgate, the risks that a worker, such as plaintiff, is exposed to while repaving a roadway are identical regardless of whether part of the roadway consists of an overpass.

At the end, there is no significance to the fact that some of the work was done on an overpass. In this connection, it is of interest to note that on the evening of the subject incident, the lane was being closed so that plaintiff and his co-workers could remove the chopped-up concrete of the sidewalk adjacent to the roadway. Hence, since the work plaintiff was performing was neither upon a bridge *qua* bridge, nor involved the dangers one normally associates with bridge work, it cannot be said that he was renovating a structure so as to impose section 240 (1) li-

ability. We note that, although there are references in the construction contract to the possible replacement of steel beams on the bridge, the record is barren of any indication that any beams were ever actually replaced. Hence, however viewed, plaintiff was engaged only in road work.

In sum, Labor Law § 240 (1) has no applicability to what in reality was a vehicular accident on a road repaving project at grade. Nor does the fact that part of the roadway includes an overpass invoke the statute. To reach a contrary conclusion would mean that any accident occurring on a roadway repaving project involving an overpass would ultimately be transfigured into a Labor Law § 240 (1) case. There is no indication that the Legislature ever intended such a result.

Accordingly, the order of the Supreme Court, Bronx County (Janice Bowman, J.), entered June 4, 1998, which denied plaintiffs' motion for partial summary judgment on their Labor Law § 240 (1) claim and granted defendant City of New York's cross motion to dismiss this claim, should be affirmed, without costs.

SAXE, J. (dissenting). Beaver Concrete Construction Co., Inc. (Beaver Concrete), plaintiff's employer, was renovating a bridge on the Pelham Parkway exit of the northbound side of the Hutchinson River Parkway, pursuant to a contract with defendant City of New York (the City). The contract required the removal of the concrete decking, and replacement of the steel beams and deck. On the night of the accident, Beaver Concrete was in the process of chopping a concrete sidewalk and preparing to remove the resulting debris. As part of the work, a portion of the roadway was to be closed and, to that end, a series of cones was to be placed on the road.

The work that plaintiff was performing on the night of his accident involved sitting facing the roadway on the tailgate of an open pickup truck, and as the truck moved forward, handing the cones to a co-worker walking behind the truck, who would then place the cones on the roadway about 20 to 25 feet apart. There were no belts, straps, or other safety devices to prevent the worker from falling off the truck while it was moving. When the truck moved "violently" or "brusquely," plaintiff fell to the ground, sustaining injuries to his face and multiple fractures.

In his action against the City, plaintiff asserted claims based on negligence and Labor Law §§ 240 and 241. The underlying

motion on appeal involves *only* the applicability of Labor Law § 240 (1). The majority holds that the work plaintiff was doing was not on a "structure" as required by section 240 (1), and, further, that the work did not involve the requisite elevation-related risk. I disagree.

At the outset, I conclude that plaintiff's assigned work fell within the statute's requirement that the work be on a "structure." Section 240 (1) does not require that a worker, to come within its protection, actually be performing work on the building or structure at the time of the accident. It merely requires that the work being performed at the time of the injury was necessary and incidental to the erection or repair of a building or structure (*see, Lombardi v Stout*, 80 NY2d 290, 296). The majority does not dispute that the renovation of the bridge (or "overpass") would constitute repair of a "structure" within the meaning of section 240 (1), but emphasizes that the aspect of the work in which plaintiff was involved was roadway repaving, rather than the aspect involving renovation of the bridge's infrastructure. The majority then goes on to reason that applying Labor Law § 240 (1) here would be tantamount to applying it in any roadway repaving project involving an overpass.

In its reasoning, the majority applies the statute's protections narrowly. But, it bears emphasis that section 240 (1) "is ' "for the protection of work[ers] from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" ' " (*Melber v 6333 Main St.*, 91 NY2d 759, quoting *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520-521, quoting *Quigley v Thatcher*, 207 NY 66, 68).

Significantly, the project was described by the City as "Reconstruction of Hutchinson River Parkway Bridge over Amtrak Together With All Work Incidental Thereto." It was not merely a roadway repaving project. The purpose of the project was repair of a structure, namely, a bridge containing a roadway, along with all necessary incidental work. The road deck of the bridge is an integral part of the bridge itself, and includes the steel beams that Beaver Concrete was required to replace. The breaking up of the road deck was, by logic as well as by contractual definition, work necessary and incidental to the job's main focus (*see, Lombardi v Stout*, 80 NY2d 290, 296, *supra*). The absence of any showing as to whether the steel beams were actually replaced, rather than merely inspected, is irrelevant, given the clearly defined purpose of the work. More-

over, the fact that the breaking up and repaving extended 300 to 400 feet beyond the bridge itself does not alter the necessary and incidental nature of the task to the main project (*see, Struble v John Arborio, Inc.,* 74 AD2d 55). Furthermore, closing a lane of traffic preliminarily to beginning this work was no less necessary and incidental than, for instance, the placing of pipes along a right-of-way in preparation for a pipeline excavation project, as occurred in *Cox v LaBarge Bros. Co.* [appeal No. 2], 154 AD2d 947, 947-948, *lv dismissed* 75 NY2d 808).

In order to determine whether the work created an elevation-related risk so as to fall within the ambit of Labor Law § 240 (1), we must consider that the types of tasks to which Labor Law § 240 (1) applies are those which "entail a significant risk inherent in the particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured" (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509, 514). The statute does not set forth an exhaustive list of elevated work sites or required safety devices; the absence of any reference to truck beds in the statute is immaterial. The question is not whether the equipment upon which the worker was situated is named in the statute, but whether the task assigned to the worker created a hazard related to the effects of gravity, and, if so, whether a safety device could have ameliorated the danger. A worker who is assigned to sit on the edge of the open truck bed of a moving pickup truck in order to hand down materials to a co-worker on the ground is at risk of falling, which risk could have been entirely avoided by providing belts or straps.

My colleague, writing for the majority, asserts that the risk in the work to which plaintiff was assigned was velocity-related rather than elevation-related. However, a worker can be placed at risk from a combination of two types of danger. The idea that an elevation-related risk can be increased by velocity, particularly by unexpected, sudden motion, is not a concept whose application is limited to "the relativistic world of Einsteinian physics," as the majority quips. Indeed, the very problem of injury caused by a combination of dangers was presented in *Gordon v Eastern Ry. Supply* (82 NY2d 555), where a worker fell off the fourth or fifth step of a ladder and was injured, not because of the distance he fell, but because the sandblaster that he had been attempting to use continued to spray him with sand after he hit the ground. The Court rejected the defendants' contention that Labor Law § 240 (1) was inap-

plicable because the injury was caused by a defective sand-blaster, rather than by their failure to provide him with a sufficiently safe ladder (82 NY2d, *supra*, at 562). It may be logically concluded that the risk presented by the elevation need not be the sole, or even the major, risk created by the worker's assigned task.

Section 240 (1) was also held to be applicable where a worker was required to stand on a platform attached to a forklift which was intended to carry him to the worksite, because the platform lacked any guardrails or other safety devices, and a sudden motion caused him to fall from the platform (*see, Boice v Jegarmont Realty Corp.*, 204 AD2d 674). These cases represent a recognition that a moderate risk created by a work assignment conducted at a relatively minor elevation may be increased by another vector force which, in fact, turns out to be the primary cause of the worker's injury; we do not rely upon them in order to support the position that an elevation-related risk can be created solely as a result of motion, an argument the majority erroneously attributes to us.

In rejecting the proposition that plaintiff's assigned task created an elevation-related risk, the majority also emphasizes plaintiff's position at the edge of the truck bed approximately three feet above the roadway. It suggests that such an elevation is insufficient, particularly in view of plaintiff's position, seated at the edge of the truck bed, presumably with legs dangling over the side. Once again, I believe this approach constitutes an inappropriately narrow application of the Labor Law.

The majority notes the existence of cases in which workers whose assigned labor was necessarily performed while standing on truck beds were held to not be protected by Labor Law § 240 (1) (*see, e.g., Tillman v Triou's Custom Homes*, 253 AD2d 254; *Colopy v William C. McCombs, Inc.*, 203 AD2d 920). It is noteworthy, however, that in *Tillman* (*supra*), the plaintiff did not fall from the edge of the truck bed, but rather because the truck itself tipped over. The Fourth Department remarked that "there was no significant risk inherent in the particular task plaintiff was performing [i.e., unloading cement blocks from a stationary flatbed truck onto a construction site, using a 20-foot boom] because of the relative elevation at which he was performing that task" (*supra*, at 257). Indeed, being elevated several feet above the ground presents no elevation-related risk to a worker standing in the middle of a truck bed, who, with the help of heavy machinery, does not have to personally

move the materials off the edge of the truck bed. By the same token, a worker's fall off a truck bed caused by his being struck by an hydraulic boom is not necessarily the result of an elevation-related risk (*see, Colopy v William C. McCombs, Inc., supra*).

In contrast, in cases where the work assigned involved unloading heavy construction materials by hand from the bed of a stationary truck, numerous other courts have held that the elevation-related risk requirement of Labor Law § 240 (1) is satisfied (*see, e.g., Curley v Gateway Communications*, 250 AD2d 888 [3d Dept]; *Monroe v Bardin*, 249 AD2d 650 [3d Dept]; *Orr v Christa Constr.*, 206 AD2d 881 [4th Dept]; *Cox v La-Barge Bros. Co.*, 154 AD2d 947, *supra*; *Sampson v Consolidated Edison Co.*, NYLJ, Nov. 12, 1998, at 31, col 1 [Sup Ct, Westchester County; *see also, Gale v Running Brook Bldrs.*, 261 AD2d 436, *lv dismissed* 93 NY2d 1041). The nature of the particular task these workers were performing involved a significant risk of falling off the side of the truck.

The same elevation-related risk that exists any time workers are required to unload materials by hand off the bed of a truck existed here. That risk was simply increased when the employee was required to work from what amounted to an elevated platform that was in motion (*see, e.g., Boice v Jegarmont Realty Corp.*, 204 AD2d 674, *supra*).

Nor may the risk be ignored because the truck bed is "merely" three feet above the ground, or because plaintiff's seated position probably decreased the space between his body and the ground. A task requiring a worker to stand on a rolling platform two feet off the ground satisfied the elevation requirement of section 240 (1) (*see, Casabianca v Port Auth.*, 237 AD2d 112, 113; *see also, Gettys v Port Auth.*, 248 AD2d 226); so did a fall from the bottom rung of a ladder (*see, Binetti v MK West St. Co.*, 239 AD2d 214). "[T]he determination whether Labor Law § 240 (1) applies does not depend upon the distance that a worker falls" (*Norton v Bell & Sons*, 237 AD2d 928, 929).

The Labor Law was enacted for the protection of workers, who " 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520, *supra*, quoting *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318), and whose safety is not otherwise the primary concern of the businesses who employ them. When the tasks assigned to workers unnecessarily expose them to risks, we should be especially careful before rejecting out of hand the application of these statutory protections.

For the foregoing reasons, I conclude that Labor Law § 240 (1) was applicable here, entitling plaintiff to summary judgment.

SULLIVAN, P. J. and WALLACH, J., concur with FRIEDMAN, J.; RUBIN and SAXE, JJ., dissent in a separate opinion by SAXE, J.

Order, Supreme Court, Bronx County, entered June 4, 1998, affirmed without costs.