(March 25, 2008)

■ BARRY HILL, Appellant, v STANLEY STAHL et al., Defendants, SAFEWORKS LLC et al., Respondents-Appellants, and 277 PARK AVENUE, LLC, Respondent. [854 NYS2d 120]—

277 Park retained nonparty One Source, Inc., plaintiff's employer, to clean the windows of the building designated as 277 Park Avenue, New York, New York. On March 26, 2003, plaintiff and his coworker, James Washington, were assigned to wash the exterior windows of the building from the eighth floor to the ground floor and, in order to perform that task, they were provided with safety harnesses to be used while they worked on a motorized scaffold.

The safety harness, which wrapped around plaintiff's body, was attached to a safety line by way of a safety clip, which is

also called a "rope grab," and the safety line was attached to an anchor on the building's eighth floor, which had a set-back roof. The worker would release the safety clip as the scaffold descended so that it would slide up and down the safety line, allowing the worker to descend freely with the scaffold. In the event of an emergency, such as a sudden drop of the scaffold, the clip would lock, preventing the worker from falling with the scaffold.

The scaffold itself hung from a single cable which was attached to an arm, or davit, that extended from a carriage running along a track bolted to the roof. The scaffold was electrically operated, and was raised and lowered by the use of a motor which had to be plugged into a 110-volt outlet on the building's roof. Under normal operating conditions, the scaffold would descend at a rate of 18 feet per minute.

The scaffold was also equipped with two different types of brakes. The first was an inertia brake, which was rebuilt every 18 months when the scaffold's cable was changed. The second was the primary brake, which was electric and drew power from the same eighth-floor roof outlet as the scaffold.

Plaintiff testified that on the day in question, he was on the scaffold with Washington cleaning the fourth floor windows when the scaffold motor began to "skip." The workers, nevertheless, continued cleaning windows but as they descended from the third floor to the second floor, the motor allegedly began to smoke and make a popping noise. Washington attempted to stop the scaffold by applying the emergency brake, but it proceeded to the ground at a faster rate than usual, which plaintiff estimated at five miles per hour.

Plaintiff, as the scaffold descended, attempted to release the safety clip but was unable to do so and, as the scaffold proceeded downward, his feet left the base of the scaffold for a few seconds. Plaintiff testified that he was unable to release the clip because "it was stuck . . . with me panicking," but that to his knowledge, the clip was not defective. Plaintiff maintained that as he reached up for the clip, he felt something "snap" under his arm and that as a result of the incident, he sustained a torn rotator cuff and herniated disc.

It was subsequently discovered that the eighth-floor roof outlet had been set to 220 volts rather than 110 volts and, as a result, the electric brake on the scaffold had melted, causing the brake shoe to remain open. The outlet had apparently been recently, and incorrectly, rewired as the result of a demolition project on the eighth floor. The New York State Department of Labor, on March 27, 2003, inspected the scaffold and issued a

notice of violation to 227 Park on the ground that the wrong voltage had caused the accident.

Plaintiff commenced this action in January 2004 against 277 Park and Spider, asserting violations of Labor Law §§ 200, 240 and § 241 (6). The parties answered the complaint and 277 Park interposed cross claims for contractual and common-law indemnification against Spider. Plaintiff subsequently moved for partial summary judgment on the issue of liability on its section 240 (1) claims against 277 Park, and Spider cross-moved for summary judgment dismissing the complaint as against it and on its claims for contractual and common-law indemnification against 277 Park. 277 Park then cross-moved for summary judgment dismissing plaintiff's claims under sections 200 and 240 as asserted against it.

The motion court, by order entered on or about October 24, 2006, denied plaintiff's motion for partial summary judgment against 277 Park on the section 240 claims, granted 277 Park's cross motion for summary judgment dismissing the sections 240 and 200 claims against that entity, and granted Spider's cross motion to the extent of dismissing the complaint and all cross claims interposed against it. We disagree with the motion court insofar as we reinstate the sections 200 and 240 claims against 277 Park and grant plaintiff partial summary judgment on the section 240 (1) claim as against 277 Park.

Labor Law § 240 (1), commonly referred to as the Scaffold Law, provides, in pertinent part, that: "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The Court of Appeals has often observed that the purpose of the statute is to protect workers by placing the ultimate responsibility for safety practices where such responsibility belongs, on the owners and general contractors, instead of on the individual workers who are not in a position to protect themselves (see e.g. Martinez v City of New York, 93 NY2d 322, 325-326 [1999]; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985]; Koenig v Patrick Constr. Corp., 298 NY 313, 318 [1948]). Consistent with this objective, the Court of Appeals has stated that the statute places absolute liability upon owners, contractors, and their agents for any breach of the statutory duty which has proximately caused injury and, ac-

cordingly, it is to be construed as liberally as necessary to accomplish the purpose for which it was framed (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]; *Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]).

The statute's protections, however, "extend only to a narrow class of special hazards" (*Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 915-916 [1999]; *see also Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490 [1995] ["not every hazard or danger encountered in a construction zone falls within the scope of Labor Law § 240 (1)"]; *Dilluvio v City of New York*, 264 AD2d 115, 117 [2000], *affd* 95 NY2d 928 [2000]) and "do not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity . . . In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]; *Striegel v Hillcrest Hgts. Dev. Corp.*, 100 NY2d 974, 977-978 [2003]).

In the matter at bar, there is no dispute that the scaffold upon which plaintiff and Washington were working was connected to an outlet set at an improper voltage, thereby causing the electric motor and brake on the scaffold to fail, precipitating its descent at a higher speed than normal. Thus, 277 Park failed to discharge its nondelegable duty to furnish or erect scaffolding, braces, and other devices "which shall be so constructed, placed and *operated* as to give proper protection to [plaintiff in the course of his employment" (Labor Law § 240 [1] [emphasis added]; *see Martinez*, 93 NY2d at 325-326). Moreover, plaintiff's failure to properly operate the safety harness was not, as defendant contends, the sole proximate cause of plaintiff's injuries but is at most, in our view, contributory negligence that was occasioned by the incorrect wiring of the roof outlets and the concomitant failure of the scaffold's motor and braking systems. Since contributory negligence is not a defense to a section 240 (1) claim (*see Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 521 [1985]; *Ernish v City of New York*, 2 AD3d 256, 257 [2003]), partial summary judgment in plaintiff's favor is warranted.

With regard to plaintiff's Labor Law § 200 claim, we find that issues of fact exist as to whether plaintiff's injury was proximately caused by any negligence on the part of 277 Park in setting the voltage of the outlet, and thereby causing the scaffold to malfunction. Given that the safety clip was normally meant

to ride up and down the safety line as the scaffold descended, it would not be unreasonable to find that during a faster-than-normal but still relatively slow dropping of the scaffold, it was foreseeable that a worker might reach up to try to release the safety clip so as to descend with the scaffold rather than hang from the safety line. As we stated above, it appears that plaintiff's actions in trying to release the safety clip at most go to the issue of contributory negligence. Accordingly, we modify to reinstate plaintiff's section 200 claim as against 277 Park. That claim, however, was properly dismissed as against Spider. Plaintiff took his instructions from 277 Park, and there is no evidence that Spider exercised any supervisory control over plaintiff's work (see Giovengo v P&L Mech., 286 AD2d 306, 307 [2001]). Nor is there any competent evidence that Spider told 277 Park to set the voltage at 220, and Spider was not responsible for checking the outlets on 277 Park's premises. Spider's cross appeal is academic since the complaint and all cross claims against it have been dismissed. Concur—Lippman, P.J., Tom, Nardelli, Catterson and Moskowitz, JJ.