(July 18, 2017)

■ DARREN JAMES et al., Appellants, v ALPHA PAINTING & CONSTRUCTION CO., INC., et al., Respondents. ALPHA PAINTING

& Construction Co., Inc., et al., Third-Party Plaintiffs-Respondents, v Brand Energy Services, LLC, Third-Party Defendant-Respondent. The Triborough Bridge & Tunnel Authority, Second Third-Party Plaintiff-Respondent, v Brand Energy Services, LLC, et al., Second Third-Party Defendants-Respondents. [59 NYS3d 21]—

Order, Supreme Court, Bronx County (Barry Salman, J.), entered April 1, 2015, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion for summary judgment as to the issue of liability on the Labor Law § 241 (6) claim, and granted defendants' motions for summary judgment dismissing the Labor Law §§ 200, 240 (1), and 241 (6) and common-law negligence claims, modified, on the law, to deny defendants' motions insofar as they sought dismissal of plaintiffs' Labor Law § 241 (6) claims, and to remand the matter to the motion court for a determination of the motions for summary judgment on the indemnity and contribution claims, and otherwise affirmed, without costs.

Plaintiffs Darren James and Balthazar Andrade were employed by Brand Energy Services, LLC (Brand) on a project to renovate and repaint the Bronx-Whitestone Bridge. Alpha Painting and Construction Co., Inc. (Alpha) was the general contractor on the project and leased the "boom truck"[1] involved in plaintiffs' accident from Quad Rentals, LLC (Quad), an affiliate of Alpha. GPI was the construction manager for the project.[2] The Triborough Bridge and Tunnel Authority is the owner of the bridge.

On the date of the accident, plaintiffs were dismantling a scaffold and loading the materials onto the boom truck for transport to the other side of the bridge. Soon after the truck took off, the raised boom struck an overhead road sign and gantry, causing part of the truck to swing into the air and the sign and gantry to fall onto the bridge. Plaintiffs were thrown from the truck onto the roadway, causing severe injuries.

"Manny" Rendeiro, the operator of the boom truck on the date of the accident, testified that he went back and forth between Alpha's and Brand's employ, and admitted having received no instruction from any source concerning either the

---

**1.** A "boom truck" is a flatbed truck equipped with a crane.

**2.** Defendant Greenman-Pedersen, Inc. (GPI) was sued incorrectly as "Greeman-Pederson, Inc."

operation of the boom or the boom truck. Rendeiro testified that he had never operated "that type of truck" prior to the incident. Rendeiro was not licensed to drive a commercial vehicle, nor was he licensed or certified to operate a boom truck or a crane.

Plaintiff James testified that the Alpha foremen were present during the hour or so it took to load materials onto the boom truck, and that they repeatedly screamed at the workers to work faster. They ordered plaintiff and the other Brand workers to board the truck and to drive off the bridge. He testified that Alpha wanted them to unload the truck as quickly as possible in order to have time to return for another load. Plaintiff Andrade testified that he boarded the truck because he was ordered to do so by the Alpha foreman and Fernando, the GPI safety officer. He testified that Fernando directed traffic so that Rendeiro could pull the boom truck out of the closed lane.

According to the Occupational Safety and Health Administration (OSHA) investigative report, the boom truck traveled approximately 700 feet with the boom "raise[d] up about 60 degree[s]," when the boom struck the overhead road sign and supporting structure, causing the sign to crash down on all lanes and injure plaintiffs. OSHA cited defendants for driving the boom truck "with extended boom" in violation of then existent 29 CFR 1926.550 (a) (1), and having employees operate the boom truck "without training in the safe operation of the crane," in violation of 29 CFR 1926.21 (b) (2).

The motion court granted defendants' motions for summary judgment dismissing the complaint, and denied plaintiffs' motion for partial summary judgment on their Labor Law § 241 (6) claim. In dismissing the Labor Law § 240 (1) claim, the court concluded that the accident was outside the scope of the statute because it occurred away from the work site. The court reasoned that even if the Labor Law statutes were applicable, such violations had not proximately caused the incident with respect to any defendant. The court dismissed the common-law negligence claim against Alpha, reasoning that Alpha had not supervised or controlled plaintiffs' work and did not have notice of any dangerous condition that caused plaintiffs' injuries.

We now modify to deny defendants' motions for summary judgment insofar as they sought dismissal of plaintiffs' section 241 (6) claim. We find that the accident was part of the site for purposes of the Labor Law, as the truck was in the process of driving away and had only departed 700 feet when the accident occurred.

The motion court correctly dismissed the section 240 (1) claim. Plaintiffs were not faced with the type of elevation-related hazard contemplated by Labor Law § 240 (1) (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). Plaintiffs' fall was not caused by an elevation-related risk, but by the motion of the truck after the boom struck the overhead road sign and gantry (*see Dilluvio v City of New York*, 264 AD2d 115, 119 [1st Dept 2000] [section 240 (1) inapplicable where the plaintiff fell off the back of a truck while being driven to the location on the roadway where he would place cones as part of lane closure process], *affd* 95 NY2d 928 [2000]). Further, the gantry was "not a material being hoisted or a load that required securing" within the meaning of the statute (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001]).

The Industrial Code provisions cited as predicates for the Labor Law § 241 (6) claims are largely inapplicable (*see* 12 NYCRR 23-8.5 [since repealed]; 23-9.7 [e]; 23-1.29 [a]).

At this stage, however, an issue of fact exists as to whether defendants violated section 23-8.2 (d) (3) of the Industrial Code, pertaining to "[m]obile crane travel," which provides that a mobile crane, with or without load, shall not travel with a boom so high that it may bounce back over the cab"[3] (12 NYCRR 23-8.2 [d] [3]; *see Braun v Fischbach & Moore*, 280 AD2d 506 [2d Dept 2001] [issue of fact as to whether the defendant violated the section, where the raised boom of a crane collided with a support beam, causing the crane to dislodge from the turntable and be pushed onto a flatbed car on which the plaintiff was standing]).[4] Defendants complain that there was no evidence that the boom bounced back over the cab. However, the regulation is violated when a mobile crane has "the boom so high that it *may* bounce back over the cab" (*id.* at 507-508 [emphasis added]). Even assuming defendants are correct, the boom was high enough to strike a gantry sign. We reject the dissent's argument that the regulation was not implicated because plaintiffs were not injured by the boom bouncing over the cab, but rather, when the boom hit the road sign. In *Braun*, the plaintiff was injured not by the boom bouncing over the cab per se, but by beams, grates and railroad ties

---

**3.** This argument was preserved inasmuch as plaintiffs alleged a violation of the regulation in their amended complaint. At least one defendant argued its inapplicability, prompting a response by plaintiffs.

**4.** The dissent maintains that the boom truck did not qualify as a "mobile crane." The dissent admits, however, that "mobile crane" is not formally defined in the pertinent regulation.

that were propelled by the turret of the crane after the crane collided with a support beam and became dislodged from the turntable (*id.* at 507). We accordingly reinstate plaintiffs' section 241 (6) claims as against defendants. Given the apparent conflict between the contract and the testimony about the operation of the work site, whether GPI functioned as a statutory agent with control over the injury-producing work presents an issue for the jury to resolve (*see Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 434 [2015]).

Defendants established prima facie that they had only general supervisory authority over plaintiffs' work, which is insufficient to establish liability under Labor Law § 200 or common-law principles (*see Hughes v Tishman Constr. Corp.*, 40 AD3d 305, 306-307 [1st Dept 2007]; *Cahill v Triborough Bridge & Tunnel Auth.*, 31 AD3d 347, 350 [1st Dept 2006]; *Dalanna v City of New York*, 308 AD2d 400, 400 [1st Dept 2003]). In opposition, plaintiffs failed to raise an issue of fact. Concur— Acosta, P.J., Richter and Manzanet-Daniels, JJ.

Tom and Kahn, JJ., dissent in part in a memorandum by Tom, J., as follows: While I agree with the majority that Supreme Court correctly dismissed the Labor Law § 240 (1), the Labor Law § 200, and the common-law negligence claims, I would find that the court also properly dismissed the Labor Law § 241 (6) claim. Accordingly, I respectfully dissent.

Plaintiffs Darren James and Baltazar Andrade were employed by third-party defendant/second third-party defendant Brand Energy Services, LLC (Brand), which had been retained by defendant/third-party plaintiff Alpha Painting and Construction Co., Inc. (Alpha), the general contractor on a project to renovate and paint the Bronx-Whitestone Bridge. Plaintiffs' job was to provide, install and dismantle scaffolding for the project.

Plaintiffs had been dismantling scaffolding on a tower located on the Queens side of the bridge and loading the scaffolding materials onto the boom truck for transport. The boom truck is a flatbed truck with a hoist or "boom" affixed to the back of the flatbed. Defendant/third-party plaintiff Quad Rentals, LLC, an affiliate of Alpha, owned and leased the truck to Alpha, which in turn loaned the truck to Brand via a verbal agreement. Since Brand did not have the necessary equipment to transport the scaffolding parts back to its yard, it borrowed the truck from Alpha. The dismantled parts were lowered onto the flatbed part of the truck using an electric rope hoist operated by Brand. Brand workers had raised the boom about 45 degrees to make it easier to lower the parts onto the truck with

the rope and pulley system. While there was sufficient room to lower the boom after the truck was loaded, the Brand workers apparently forgot to return the boom to its resting position.

Plaintiff James testified that after the truck was loaded, James and several other Brand employees were directed to board the boom truck. Just after the truck pulled into the moving lane, James heard a "bang" as the boom struck the road sign and gantry, causing part of the truck to swing into the air and the sign and gantry to fall onto the bridge, and he was thrown onto the pavement, sustaining injuries.

Plaintiff Andrade testified that after he hopped into the cab of the truck, the driver pulled the truck into the middle lane where the accident occurred. During the impact, the boom truck "went up in the air," causing him to hit his head "hard" on the windshield.

To establish liability under section 241 (6), a plaintiff must specifically plead and prove the violation of an applicable Industrial Code regulation. An action may be predicated upon Labor Law § 241 (6) only where there has been a violation of a specific, detailed rule governing the conduct at issue (*Misicki v Caradonna*, 12 NY3d 511, 515 [2009]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 504 [1993]). "The Code regulation must constitute a specific, positive command," and "must also be applicable to the facts and be the proximate cause of the plaintiff's injury" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 271 [1st Dept 2007], *lv denied* 10 NY3d 710 [2008]). The cited provisions should not be interpreted "too broadly" (*Garcia v 225 E. 57th St. Owners, Inc.*, 96 AD3d 88, 92 [1st Dept 2012]), and, as plainly expressed, 12 NYCRR 23-8.2 (d) only applies to mobile cranes. This Court routinely affirms the dismissal of claims under Labor Law § 241 (6) where the supporting Industrial Code provisions are inapplicable to the claim (*see e.g. Urbano v Rockefeller Ctr. N., Inc.*, 91 AD3d 549, 550 [1st Dept 2012]), and we should follow suit here.

In support of plaintiffs' section 241 (6) claim, the majority finds that an issue of fact exists as to whether defendants violated 12 NYCRR 23-8.2 (d) (3), which pertains to mobile crane travel. I would find that plaintiffs cannot predicate their section 241 (6) claim on this provision because that provision is not applicable to the boom truck used by the plaintiffs, and because plaintiffs' injuries were not caused by the hoist bouncing over the cab of the truck—which is the focus of the regulation.

12 NYCRR 23-8.2 (d), entitled "Mobile crane travel," provides:

"(1) A mobile crane traveling to or from one job site to another or traveling on a street or highway shall not carry any jibs, attachments, buckets or other devices or material attached in any way to the boom whether the boom is in the folded position or not. . . .

"(2) Mobile cranes shall not travel with suspended loads unless such crane is under the control of a competent, designated person who shall be responsible for the position of the load, boom location, ground support, travel route and speed of movement.

"(3) A mobile crane, with or without load, shall not travel with the boom so high that it may bounce back over the cab."

First, contrary to the majority's contention, I would find that this regulation does not apply to the boom truck at issue, which clearly is not a mobile crane. While "mobile crane" is not formally defined by the definition section of the regulation (*see* 12 NYCRR 23-1.4), a thorough review of the entirety of section 23-8.2 reveals that a mobile crane has certain elements not present on the boom truck. More specifically, mobile cranes are required to have (1) footings "sufficient to distribute the load so as not to exceed the safe bearing capacity of the underlying material" (12 NYCRR 23-8.2 [b] [1]); (2) outriggers, i.e., a beam that gives stability to the crane (12 NYCRR 23-8.2 [b] [2]); (3) counterweights "as specified by the manufacturers or builders of such cranes or by professional engineers licensed to practice in the State of New York" (12 NYCRR 23-8.2 [e]); and (4) booms with a breaking mechanism and sheave guard (12 NYCRR 23-8.2 [f]). The record evidence, including photographs of the truck, demonstrates that the truck did not have the components required for a mobile crane such as outriggers and counterweights. Thus, it would be improper to treat the boom truck as a mobile crane, and therefore, the provision is inapplicable.

The majority cannot and does not dispute that the subject truck did not have the components of a mobile crane, and resorts to merely noting that "mobile crane" is not defined in the regulation. This is an unconvincing response to the inapplicability of the regulation, which prescribes travel operation of a crane and not a truck. The two vehicles are clearly distinguishable. In addition, because the boom on the truck was located behind the cab and was facing away from it and toward the rear of the truck, it would be physically impossible for the boom to bounce back over the cab, which is the focus of the cited provision. In this case, there is no evidence that the boom bounced over the cab. Moreover, the proof here indicates that the boom was not so high that it could have bounced back over

the cab, as the evidence shows that the boom was raised only at either 45 or 60 degrees. Nor were plaintiffs' injuries caused by the boom bouncing over the cab as required by the "specific" language of the regulation (*Misicki v Caradonna*, 12 NY3d at 515). Rather, they were caused when the boom hit the road sign.

In *Braun v Fischbach & Moore* (280 AD2d 506 [2d Dept 2001]), relied on by the majority, the Second Department found an issue of fact as to whether the defendant violated section 23-8.2 where the boom of a crane located on a work train was raised high enough that it collided with a support beam, causing the crane to become dislodged from the turntable and pushed onto the flatbed car also located on the train and where the plaintiff was standing. However, crucially, it was undisputed that a mobile crane was involved in that case, and not a boom truck. Moreover, that decision did not indicate how high or at what angle the boom was raised. Thus, this case is not controlled by *Braun*.

Accordingly, I would affirm the order on appeal in its entirety.