Holness v 421 Kent Dev., LLC (2025 NY Slip Op 50022(U))

[*1]

Holness v 421 Kent Dev., LLC

2025 NY Slip Op 50022(U)

Decided on January 3, 2025

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 3, 2025
Supreme Court, New York County

Kemar Holness and KEVIN MCFARLANE, Plaintiffs,

against
421 Kent Development, LLC, XIN DEVELOPMENT MANAGEMENT EAST, LLC, and WONDER WORKS CONSTRUCTION CORP., Defendants.

Index No. 152092/2016

Elefterakis, Elefterakis & Panek, New York, NY (Devon Reiff and Andrew Levinson of counsel), for plaintiffs.
Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY (Timothy G. McNamara of counsel), for defendants/third-party plaintiffs 421 Kent Development, LLC, Xin Development Management East, LLC, and Wonder Works Construction Corp.
Gerber Ciano Kelly Brady LLP, Buffalo, NY (Aneshia Chintamani of counsel), for second third-party defendant Creative Environment Solutions Group.
McMahon, Martine & Gallagher, LLP, Brooklyn, NY (Andrew D. Showers of counsel), for second third-party defendant/third third-party plaintiff Universal Services Group, Ltd.
Bartlett LLP, Melville, NY (Roland A. Vitanza of counsel), for third third-party defendant/fourth third-party plaintiff Centrifugal Associates Group, LLC.
Law Office of Eric D. Feldman, New York, NY (Jana Sperry of counsel), for fourth third-party defendant/fifth third-party plaintiff J&Z Mechanical Construction. 
Congdon, Flaherty, O'Callaghan, Fishlinger & Pavlides, Uniondale, NY (Michael T. Reagan of counsel), for fifth third-party defendant Metropolis HVAC Contractors Inc.

Gerald Lebovits, J.

This is an action to recover damages for personal injuries allegedly sustained by a welder and an ironworker, plaintiffs Kemar Holness and Kevin McFarlane, on March 1, 2016, while working on a construction project at 421-429 Kent Avenue in Brooklyn. Plaintiffs brought this action against defendants/third-party plaintiffs 421 Kent Development, LLC (421 Kent) and Xin Development Management East LLC (Xin), owners of the premises, and Wonder Works Construction Corporation (Wonder Works), general contractor/construction manager. Plaintiff has asserted claims sounding in common-law negligence and violations of Labor Law §§ 200, 240 (1), and 241 (6).
Defendants brought a third-party complaint against plaintiffs' employer, Alabama Iron Works Corp ("Alabama"), as a third-party defendant, seeking (1) contractual indemnification; (2) common-law indemnification and contribution; and (3) damages for breach of contract for failure to procure insurance. (NYSCEF No. 12.) Defendants commenced a second third-party action against Universal Services Group, Ltd ("Universal") and Creative Environmental Solutions Corporation ("Creative") as second third-party defendants, seeking (1) contractual indemnification from Universal; (2) common-law indemnification and contribution from Universal and Creative; and (3) damages from Universal for breach of its contractual obligation to procure insurance. (NYSCEF No. 24.)
Universal brought a third third-party complaint against Centrifugal Associates Group, [*2]LLC ("Centrifugal"), seeking (1) common-law indemnification; and (2) common-law contribution. (NYSCEF No. 78.) Next, Centrifugal commenced a fourth third-party action against J&Z Mechanical Construction Corp ("J&Z"), seeking (1) contractual indemnification; (2) contractual contribution; (3) common-law indemnification; (4) common-law contribution; and (5) damages for breach of contract for failure to procure insurance. (NYSCEF No. 101.) J&Z commenced a fifth third-party action against Metropolis HVAC Contractors Inc. ("Metropolis"), seeking (1) contractual indemnification; (2) common-law indemnification and contribution; and (3) damages for breach of contract for failure to procure insurance. (NYSCEF No. 135.) And And defendants have cross-claimed against Centrifugal and J&Z for (i) contractual indemnification, (ii) common-law indemnification and contribution, and (iii) breach of contract for failure to procure insurance. (See NYSCEF Nos. 127 [cross-claim against J&Z], 237 [cross-claim against Centrifugal].)
In motion sequence 003, plaintiffs move, pursuant to CPLR 3212, for an order granting partial summary judgment on the issue of liability under Labor Law § 240 (1) against defendants/third-party plaintiffs. (NYSCEF No. 139.) This motion is granted.
In motion sequence 004, J&Z moves under CPLR 3212 for summary judgment dismissing the fourth third-party complaint as well as any and all crossclaims against it. (NYSCEF No. 165.) Centrifugal cross-moves under CPLR 3212 for summary judgment on its claims against J&Z for contractual and common-law indemnification and contribution. Centrifugal also cross-moves for summary judgment dismissing the claims and crossclaims brought against it by Universal, and by defendants/third-party plaintiffs. (NYSCEF No. 226.)
The branches of J&Z's motion for summary judgment dismissing Centrifugal's contractual indemnification and common-law indemnification and contribution claims are denied. The branch of J&Z's motion seeking dismissal of Centrifugal's breach-of-contract claim is granted. The branch of Centrifugal's motion seeking dismissal of Universal's common-law indemnification claim against it is granted, and the branch of the motion seeking dismissal of Universal's contribution claim is denied. The branches of Centrifugal's cross-motion seeking summary judgment in its favor on its concerning its contractual indemnification, common-law indemnification, and contribution claims against J&Z are denied.
In motion sequence 005, Universal moves under CPLR 3212 for summary judgment dismissing the second third-party complaint in its entirety, and dismissing all claims, cross-claims, and counter-claims against it in their entirety. (NYSCEF No. 189.) This motion is denied.
In motion sequence 006, Creative moves under CPLR 3212 for summary judgment dismissing the complaint, the second third-party complaint, and all cross-claims brought against it. (NYSCEF No. 193.) This motion is denied in its entirety.
In motion sequence 007, plaintiffs move, pursuant to CPLR 603 to sever the fifth third-party complaint filed by J&Z, or in the alternative to dismiss the fifth third-party action under CPLR 1010. (NYSCEF No. 238.) This motion is denied.
In motion sequence 008, Metropolis moves under CPLR 3212 (a) for summary judgment dismissing the fifth third-party complaint. (NYSCEF No. 314.) This motion is denied.
BACKGROUND
Plaintiffs have alleged that on March 1, 2016, they sustained personal injuries while [*3]working at a construction site owned by defendants 421 Kent and Xin, located at 421-429 Kent Avenue in Brooklyn. Plaintiffs fell while working on top of a Baker-type scaffold that tipped over when one leg of the scaffold went through an opening in the roof surface.
421 Kent and Xin had hired Wonder Works to serve as the construction manager for a project at the Premises, which entailed the construction of a new eight-story residential apartment building complex ("Project"). Wonder Works subcontracted their work to Alabama. (See NYSCEF No. 46 [Wonder Works/Alabama Subcontract Agreement].) On the day of the accident, plaintiffs' work consisted of installing large heavy steel support beams for the air conditioning units on the roof of the Premises.
Deposition Testimony of Plaintiff Holness
Holness testified that on the day of the accident, he was employed by Alabama as a welder. (See NYSCEF Nos. 155 at 18:12-15 & 158 at 18:5-19:3.) Holness performed welding work to both the interior and exterior of the building under construction. (See NYSCEF No. 155 at 28:13-20.) He would weld supports, stairways, gates, angle irons for the block that goes on the side of the building, as well as the elevator steel. (See id. at 32:12-24.) 
During his work, Holness used Baker scaffolds, a type of scaffold that has four wheels and barriers for safety. (See id. at 37:10-17, 38:22-39:7.) Alabama provided the Baker scaffolds at the project. (See id. at 38:2-19.) Holness had to assemble the Baker scaffold every day to use it, and then disassemble it when he was finished finished. (See id. at 41:18-42:12.) When assembled, the scaffold was seven feet tall. The Baker scaffold had a built-on ladder on its side that Holness would climb to get to the platform.
Holness's supervisor at the project was Alabama's foreman, Freddy Rivera. (See id. at 29:2-10.) Alabama provided Holness with all his equipment and safety gear. (See id. at 35:5-19.) Holness received safety instructions from Alex, who was an employee of Wonder Works. (See id. at 29:8-30:8, 31:3-15, 33:11-34:2.) Holness was required to wear a harness whenever working on a scaffold. (See id. at 34:3-35:19.) He was not permitted to begin working on a scaffold until receiving approval to do so from Alex. Alex would check the scaffold's wheels to ensure they were properly locked and inspect the area where the scaffold was set up. (See id. at 46:14-25.)
On the day of the accident, Holness arrived at 7 o'clock in the morning and proceeded to "put on [his] harnesses, get [his] gear together." (See id. at 47:12-48:19.) Holness went up to the roof with Freddie, Alex, McFarlane, and Muscle, and then received his instructions from Freddie on the work he was to do that day. Holness and McFarlane were tasked with installing support beams for the air conditioning unit. (See id. at 56:3-6.) Alex observed him and McFarlane set up the Baker scaffold, made sure the wheels were locked, that the harnesses were on, and that the area was clear to proceed to work. (See id. at 51:17-25, 53:11-23, 70:6-20.) Prior to the incident, Alex authorized Holness to work on the scaffold. (See id. at 46; NYSCEF No. 158 at 23:1-22.).
As they set up the scaffold, Holness did not notice anything irregular about the roof surface and the ground appeared to be level. (See NYSCEF No. 157 at 71:17-20, 79:4-8.) There was nowhere to tie off their harnesses. (See id. at 79:4-9-19.) Holness climbed onto the scaffold, McFarlane handed up the steel beam they were going to install, and then placed it onto the platform. (See NYSCEF Nos. 158 at 31:5-32:23 & 155 at 79:4-22.) McFarlane then climbed [*4]onto the scaffold and the two men proceeded to lift the steel beam, each supporting one end of the beam on one shoulder. As they were lifting the beam, the scaffold tipped over and fell. (See NYSCEF No. 155 at 83:2-7, 89:9-91:25.) Holness fell from the scaffold and landed on the roof on his back. (See id. at 91:13-16.) The steel beam fell and landed on his left leg. (See id. at 91:17-25.)
Deposition Testimony of Plaintiff McFarlane
McFarlane testified that on the day of the accident, he was employed by Alabama as an ironworker. (See NYSCEF No. 159 at 18:16-18.) At the time of the accident McFarlane was assisting Holness with installing the support steel beams for the air conditioning units on the roof. (See id. at 49:4-11.) McFarlane testified that Freddie placed the Baker scaffold on the roof where the work was to be completed, and that Alex was present and gave them the go-ahead to begin working. (See NYSCEF Nos. 159 at 51:2-21. 59:11-16 & 160 at 209:16-210:10.)
McFarlane testified that the roof surface where the scaffold was placed appeared to be structurally sound. (See NYSCEF No. 160 at 219:15-220:8, 329:6-8.) The ground below the scaffold was slightly raised and "did appear uneven but still a solid surface." (See NYSCEF No. 159 at 169:11-170:17.) He did not observe any holes or openings in the roof surface. (See id. at 168:22-169:6.) McFarlane confirmed that there was nowhere for them to tie off their safety harnesses or to tie off the Baker's scaffold itself. (See id. at 56:16-25, 58:4-8.) Holness went up onto the scaffold first; McFarlane then lifted the beam to Holness to place it on the scaffold and went up the scaffold himself.. (See id. at 62:18-64:2.) The two men lifted the beam to about chest height, and then "all I saw was sky." (See id. at 67:21-25.) All he remembered was "hitting the ground and being hit in the chest with the beam." (Id. at 69:12-13.)
Deposition Testimony of Alex Styagov (Creative's Employee)
Alex Styagov was employed by second third-party defendant Creative. (See NYSCEF No. 161 at 24:24-26:2.) At the time of the accident, Styagov worked as "site safety consultant" at the Premises. (See id. at 27:16-28:25, 29:15-30:6, 31:5-16, 37:24-38:24.) As a "site safety consultant," Styagov testified that he did not have duties like that of a site-safety manager. (See id. at 99:6-19.) A "[site-safety] [m]anager is [a] legally and financially responsible American who sign[s] site safety plan[s] and whose name is filed with the Department of Buildings [and] is [the] enforcing agent on site." (See id. at 32:2-10.) By contrast, Styagov stated that his duties were merely to "observe, report, and inform." (See id. at 34:3-5.) He prepared daily logs while working at the Premises that he sent to Wonder Works and Creative. (See id. at 78:3-24.) He held morning meetings with supervisors on site, then said it was weekly meetings with subcontractors, where he would present safety issues. (See id. at 40:2-44:18.) Styagov also mentioned daily orientation meetings with new workers. (See id. at 49:9-23.)
On the day of the accident, Styagov first testified that he was making his way through every floor of the Premises, and he was "almost at the roof when somebody actually approached [him] and said something happened on the roof and [he] started to run to the place where it happen[ed]." (See id. at 52.) He later testified that he was "somewhere in the building" when the accident occurred and that he learned of the accident when "somebody called [him] on [his] radio." (Id. at 54:5-19, 55:3-10.) He then testified that he didn't know where in the building he [*5]was when he was alerted to the accident but most likely on the stairs. (See id. at 56:9-23.) However, he did say he reached the site of the accident "[a]lmost right away." (Id. at 57:7-10.) Styagov did not recall whether any contractor asked him to look at a particular piece of equipment that morning. (See id. at 53:8-18.)
When asked about what he saw at the site, Styagov testified that:
"[T]hey showed me the hole, they showed me the baker's scaffold and they said the guys was climbing on the baker's scaffold carrying approximately like this heavy beam standing on the platform without any guardrails, no protection, no nothing and the scaffold just fell to the ground so the holes on the roof that was covered with the rubber cover and it just flip over and unfortunately they were at the scaffold at this time holding this heavy metal beam." (See NYSCEF No. 161 at 63:12-23.)
The hole was "on the roof[,] it was a duct work and it was installed duct work and the company at the roofing company definitely had to cover those openings around them." When showed photographs of the accident, Styagov testified that the scaffold was assembled incorrectly because it lacked a "base" and "[i]t's against the rules, against the law" to assemble a scaffold in such a way. (See id. at 66:6-20.) He further testified that he did not observe, approve, or authorize the construction of that particular scaffold and that he prohibited the use of Baker scaffolds on the site in January 2016. (See id. at 70:16-71:5.)
Wonder Works Incident Report
In the Wonder Works accident report, the accident was described, in pertinent part, as follows:
"Two workers from Alabama Iron works (K. McFarlane, K. Holness) were installing a metal frame around bulkhead. They climbed a baker's scaffold holding a seven foot steel beam (approx. 80 lbs) form both ends. One of [the] scaffold's leg[s] was set on the top of the cover installed around a duct work opening. The cover did not hold the weight of the scaffold and broke through causing the scaffold to go off balance and falling down while both [plaintiffs] were on the scaffold lifting the beam. Both [plaintiffs] fell on their backs with the steel beam on top of them." (NYSCEF No. 163.)
Procedural History
Holness commenced an action on March 10, 2016. (NYSCEF No. 143.) McFarlane commenced an action on March 16, 2016. (NYSCEF No. 144.) Plaintiffs' individual actions were thereafter consolidated pursuant to an order dated November 10, 2016. (NYSCEF No. 147.) Defendants joined issue by serving a verified answer on May 27, 2016.
Plaintiffs have asserted claims for (i) common law negligence; (ii) violations of Labor Law §§ 200, 240, and 241(6); (iii) violations of Rule 23 of the Industrial Code of the State of New York; and (iv) violation of Article 1926 of OSHA (29 CFR § 1926.) (See NYSCEF No. 1 at 4-5.) Defendants' answer generally denied the complaint's allegations and raised 19 affirmative defenses. (See NYSCEF No. 6.) As discussed at the outset, five different third-party actions then [*6]ensued. Plaintiffs, defendants, and the various third-party plaintiffs and defendants have now brought six summary-judgment motions against one another. Those motions are resolved as follows.

 Motion Sequence 003
The Labor Law § 240 (1) Claim
In motion sequence 003, plaintiffs move, pursuant to CPLR 3212, for partial summary judgment on liability under Labor Law § 240 (1) as against defendants. The motion is opposed by Centrifugal (NYSCEF No. 273), Universal (NYSCEF No. 274), and defendants (NYSCEF Nos. 277 & 278).
Labor Law § 240 (1), commonly referred to as the Scaffold Law, provides, in part:
"All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or painting of a building or structure shall furnish or erect, or cause to be erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."
Labor Law § 240 (1) was enacted to "'prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person.'" (John v Baharestani, 281 AD2d 114, 118 [1st Dept 2001], quoting Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]; accord Nieves v Five Boro A.C. & Refrig. Corp., 93 NY2d 914, 916 [1999] ["The core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling."].) To achieve this goal, § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give property protection to those individuals performing the work." (Quiroz v Mem. Hosp. for Cancer & Allied Diseases, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks omitted].) The statute applies to incidents involving a "falling worker" or a "falling object." (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]; accord Harris v City of NY, 83 AD3d 104, 108 [1st Dept 2011].)
However, "[n]ot every worker who falls at a construction site, and not any object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1)." (Narducci, 96 NY2d at 267; accord Ross, 81 NY2d at 501.) The statute is limited to a "narrow class of dangers," specifically "special hazards presenting elevation-related risk[s]." (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 96-97 [2015] [internal quotation marks omitted]; Rocovich v Consol. Edison Co., 78 NY2d 509, 514 [1991].) Accordingly, absolute liability may be imposed "only where the plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." (O'Brien v Port Auth. of NY & N.J., 29 NY3d 27, 33 [2017].)
Plaintiffs must establish that the scaffold "proved inadequate to shield [plaintiffs] from harm directly flowing from the application of the force of gravity to an object or person." (Ross, 81 NY2d at 501 [internal quotation marks omitted] [emphasis in original].) In falling-worker cases, "[w]hether a device provides proper protection is a question of fact, except when the [*7]device collapses, moves, falls, or otherwise fails to support the plaintiff and his or her materials." (Melchor v. Singh, 90 AD3d 866, 868 [2d Dept 2011]; Peralta v. Am. Tel. & Tel. Co., 29 AD3d 493, 494 [1st Dept 2006] [unrefuted evidence that the unsecured ladder moved, combined with evidence that no other safety devices were provided, warranted a finding that the owners were liable under Labor Law § 240 (1)].) That a scaffold or ladder collapsed will constitute prima facie evidence of a § 240 (1) violation. (See Thompson v St. Charles Condos., 303 AD2d 152, 154 [1st Dept 2003]; Aragon v 233 W. 21st St., Inc., 201 AD2d 353, 354 [1st Dept 1994].) Plaintiffs are not required to show that the scaffold was defective. (See Martinez-Gonzalez v 56 West 75th St., LLC, 172 AD3d 616, 617 [1st Dept 2019].)
Initially, it is uncontested that defendants are proper Labor Law defendants, such that liability may attach to them under Labor Law § 240 (1). Moreover, no party opposing the motion has disputed that plaintiffs' accident falls under the protection of § 240 (1).
Plaintiffs' Prima Facie Case
Plaintiffs rely on a "falling worker" theory of liability: They contend that the scaffold tipped when one leg of the scaffold went into a hole in the roof surface, causing plaintiffs to fall from the scaffold to the roof; and their having fallen due to the scaffold's tipping establishes prima facie that the scaffold failed to provide proper protection under § 240 (1). (See NYSCEF No. 141 at 13.) This court agrees.
Plaintiffs have met their prima facie burden: Their testimony constitutes evidence that (1) plaintiffs were working on a scaffold raising beams and were thus subjected to an "elevation-related risk"; (2) the scaffold was not secured to the wall of the building; (3) although both men were wearing harnesses, there was nowhere for them to tie off; and (4) plaintiffs fell when the scaffold tipped over. (See Gordon v E. Ry. Supply, 82 NY2d 555, 561-562 [1993].)
Although safety harnesses were provided, both plaintiffs confirmed that there was no tie-off location where they were instructed to work. Courts have found safety harnesses inadequate absent an appropriate place to tie off. (See Anderson v MSG Holdings, L.P., 146 AD3d 401, 402 [1st Dept 2017].) As "the affixing of harnesses and safety lines attached to a safe structure are the type of safety devices envisioned by [section] 240(1) to prevent a worker from falling" off a scaffold, defendants' failure to provide plaintiffs with such constitutes a violation of the statute. (Ciaurella, 228 AD3d at 556-557 [internal quotation marks omitted].)
Both plaintiffs testified that the scaffold tipped over, causing them to fall to the ground and the heavy steel beam they were lifting to fall onto them. That testimony establishes prima facie that a violation of § 240 (1) occurred. (See Jerdonek v 41 W. 72 LLC, 143 AD3d 43, 45 [1st Dept 2016] ["Plaintiff's testimony that he fell and was injured when the scaffolding on which he was working moved establishes prima facie that the statute was violated and that the violation was a proximate cause of plaintiff's injuries."]; Garcia v 122-130 E. 23rd St. LLC, 220 AD3d 463, 463-464 [1st Dept 2023] (explaining that sworn "testimony establishing that a safety device collapsed is sufficient for a prima facie showing on liability"].)
Moreover, it is undisputed that the scaffold on which plaintiffs were standing tipped over because one of its wheels was placed over a cover installed around a duct work opening. The placement of the scaffold over the improperly covered opening in the roof was a proximate cause of plaintiffs' accident. The statutory duty to provide "proper protection" requires that the safety device be appropriately placed or erected so that it safeguards the employee. (See Bland v [*8]Manocherian, 66 NY2d 452, 460 [1985].) Here, "[t]he fact that the scaffold tipped and plaintiff fell to the ground demonstrates that it was not so placed . . . as to give proper protection to [plaintiffs]." (Id. at 929 [internal quotation marks omitted].) Thus, plaintiffs' accident was caused by an elevation-related risk as contemplated in Labor Law § 240 (1). (See Wolf v Ledcor Constr. Inc., 175 AD3d 927 [4th Dept 2019].[FN1]
) Since plaintiffs' injuries were proximately caused by the inadequacy of the scaffold and the lack of any safety device to prevent them from falling off the scaffold, plaintiffs' accident is covered by section 240 (1). (See Susko, 103 AD3d at 435; Badzio, 200 AD3d at 592.)[FN2]

Defendants' Arguments in Opposition
The opposing parties fail to raise any triable issues of fact in response to plaintiffs' prima facie showing.
The "sole proximate cause" exception precludes claims under Labor Law § 240 (1) "where the injured party is solely responsible for the accident." (Perrone v Tishman Speyer Props., L.P., 13 AD3d 146, 147 [1st Dept 2004].) Under this exception, a defendant has no liability if plaintiffs "(1) had adequate safety devices available, (2) knew both that the safety devices were available and that [they were] expected to use them, (3) chose for no good reason not to do so, and (4) would not have been injured had they not made that choice." (Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp., 34 NY3d 1166, 1167-1168 [2020] [internal quotation marks omitted]; accord Nacewicz v Roman Catholic Church of the Holy Cross, 105 AD3d 402, 402-403 [1st Dept 2013].) The related "recalcitrant worker" defense "requires a showing that the injured worker refused to use the safety devices that were provided by the owner or employer." (Correia v Professional Data Mgt., 259 AD2d 60, 63 [1st Dept 1999] [internal quotation marks omitted].)
Defendants, Centrifugal, and Universal all raise the same arguments based on sole [*9]proximate cause; these arguments are considered together. The opposing parties argue that plaintiffs' motion for partial summary judgment must be denied because there is a question of fact as to whether plaintiffs' own conduct, including the recalcitrant failure to use available safety devices, was the sole proximate cause of their injuries. (See NYSCEF Nos. 277 at 4-7; 273 at 4-6; 274 at 4-9.) Their arguments are unpersuasive.
First, defendants raise the fact that plaintiffs did not question or object to their foreman's directives in his description of the work to be completed, question the positioning of the scaffold, or request additional workers be utilized to support or steady the scaffold. (See NYSCEF No. 277 at 4-5.)
Not only is this argument unsupported by the record, but it disregards the purpose of the Scaffold Law. Under § 240 (1), workers are under no duty to demand an alternative safety device because "[t]o place that burden on employees would effectively eviscerate the protections that the legislature put in place." (DeRose v Bloomingdale's Inc., 120 AD3d 41, 47 [1st Dept 2014].) Workers not the sole proximate cause of their injuries when there is evidence that they were following a supervisor's instructions. (See Hayek v Metro. Transp. Auth., 195 AD3d 568, 568 [1st Dept 2021] ["Given the undisputed evidence that plaintiff was following the directions of his foreman at the time of his injury, plaintiff cannot be the sole proximate cause of his injuries."].) Moreover, a "[worker's] failure to ask his coworkers to hold the ladder while he worked [does] not constitute the sole proximate cause of the accident, since a coworker is not a safety device contemplated by the statute." (Rodriguez v BSREP UA Heritage LLC, 181 AD3d 537, 538 [1st Dept 2020] [internal quotation marks and citations omitted].)
Second, defendants contend that plaintiffs did not attempt to "tie off" the Baker scaffold to the roof. (See NYSCEF No. 277 at 5.)
This fails because both plaintiffs testified without contradiction that there was nowhere for them to tie off their harnesses, suggesting that there would also have been nowhere to tie off the scaffold. (See NYSCEF Nos. 160 at 294:8-17 & 157 at 79:9-21.) Defendants provide no evidence that tie-off locations were available where plaintiffs were working. (See Latteri v Port of Auth. of NY & N.J., 205 AD3d 546, 546-547 [1st Dept 2022] [worker's failure to wear safety harness as required was insufficient to raise issue of fact where no evidence of available tie-off locations where he was working].)
Defendants misplace their reliance on Cahill v Triborough Bridge Tunnel Auth. (4 NY3d 35 [2004]). In Cahill, the worker had received specific instructions to use a safety line while climbing, had been reprimanded before for not using a safety line, and had chosen not to use a safety line that was readily available. (See id. at 38, 40.) This is not the case here. There is no evidence here that plaintiffs were recalcitrant in the sense that they deliberately refused to use their safety harnesses; rather, there were no tie-off location to which the harnesses could be attached. (See Badzio v E. 68th St. Tenants Corp., 200 AD3d 591, 592 [1st Dept 2021].)
Third, defendants argue that plaintiffs failed to reposition the scaffold to a safer position away from the roof opening or bring the alleged hazardous condition to their foreman's attention. (See NYSCEF No. 277 at 5.) Centrifugal also raises this argument, contending that since plaintiffs constructed the scaffold inches away from the duct, they were the sole proximate cause of their accident. (See NYSCEF No. 273 at 5.)
Plaintiffs' alleged failure to reposition the scaffold to a safer position is not, as defendants contend, the sole proximate cause of plaintiffs' injuries but is at most, contributory negligence. (See Stankey v Tishman Constr. Corp. of NY, 131 AD3d 430, 430 [1st Dept 2015].) An injured [*10]worker's "contributory negligence is not a defense to a § 240 (1) claim." (Hill v Stahl, 49 AD3d 438, 442 [1st Dept 2008].)
Fourth, defendants contend that plaintiffs failed to use a properly authorized and vetted device for working above the roof level, citing Styagov's deposition in which he testified that Baker's scaffolds were forbidden on the job site from January 2016. (See NYSCEF No. 277 at 5.) Styagov testified that he represented to the subcontractors in a meeting that Baker's scaffolds could not be used—but also that if he saw one onsite, he would not tell the foreman to stop using it, but merely report the problem to Wonder Works. (See NYSCEF No. 161 at 105:25-109:18.) Centrifugal argues that because Styagov instructed plaintiffs that Baker's scaffolds were prohibited at the roof level, plaintiffs were recalcitrant in using the scaffold anyway. (See NYSCEF No. 273 at 5.)
Defendants failed to show that plaintiffs disregarded specific instructions not to use the Baker's scaffold. Defendants offer no evidence of what the alternative, vetted device for working on the roof was. Nor does Styagov identify what that safety device would be in his testimony. Workers must have knowledge of the availability of safety devices and that they are expected to use them. (See Gallagher v NY Post, 14 NY3d 83, 88-89 [2010].) Styagov's vague assertion that he banned use of Baker's scaffolds on the roof does not establish that he, or anyone else, ever directed plaintiffs not to use the Baker's scaffold. (See Rivera v Ambassador Fuel and Oil Burner Corp., 45 AD3d 275, 276 [1st Dept 2007] ["A worker does not become recalcitrant merely by disobeying a general instruction not to use certain equipment, if safer alternatives were not supplied."].)
Defendants provide no other evidence to establish that plaintiffs knew both that alternative safety devices were available and that they were expected to use them rather than the Baker's scaffold provided by their employer. (See Mazzarisi v NY Society for Relief of Ruptured & Crippled, Maintaining Hosp. for Special Surgery, 205 AD3d 424, 425 [1st Dept 2022].) "Without deciding the issue of whether a different conclusion would be appropriate if there were evidence that [Styagov or defendants] had taken steps to prevent the use of the scaffold by employees of other trades or that [plaintiffs] knew [they were] not authorized to use it, [this court] note[s] that there was no such evidence." (Urbina v 26 Court St Assoc., 46 AD3d 268, 274 [1st Dept 2007].)
Accordingly, the branch of plaintiffs' motion seeking summary judgment on liability on their Labor Law § 240 (1) claim against defendants is granted.

 Motion Sequence 005
In motion sequence 005, Universal moves under CPLR 3212 for summary judgment dismissing defendants' second third-party complaint and all crossclaims, counterclaims and claims of any nature against Universal in their entirety and with prejudice. (See NYSCEF No. 189.)

Defendants' Claim for Contractual Indemnification from Universal
Universal moves for summary judgment dismissing defendants' contractual-indemnification claim. That claim is based on to the following indemnification provision in the Wonder Works/Universal subcontract:
"EX[H]IBIT G - HOLD HARMLESS AGREEMENT"
"To the fullest extent of the law, Subcontractor agrees to indemnify, defend, save, and hold the Owners - Xin Yuan Real Estate Co. Ltd, And Contractor - Wonder Works Construction Corp and their respective partners, officers, directors, employees, and anyone else acting for or on behalf of any of them (herein collectively called "Indemnities") harmless from and against all liability, demands, and actions of any nature whatsoever (including attorney's fees and disbursements) which arise out of or are connected with, or any act or omission of Subcontractor:"
1. "The performance of the Work by the subcontractor, or any act or omission of Subcontractor;"
2. "Any accident or occurrence which happens, or is alleged to have happened, in or about the place while the Work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly, or indirectly through a subcontractor or material agreement or (b) while any of the Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the Performance of the Work."
(NYSCEF No. 30 at 106 [emphasis added].)
"A party is entitled to full contractual indemnification provided that the "intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances."" (Drzewinski v Atlantic Scaffold & Ladder Co., 70 NY2d 774, 777 [1987], quoting Margolin v NY Life Ins. Co., 32 NY2d 149, 153 [1973].) "Where an entity is held strictly liable based solely on its status as owner of the premises pursuant to Labor Law § 240(1), as is here the case with respect to [421 Kent and Xin], the owner is entitled to contractual indemnification where such has been agreed to between the parties." (Velez v Tishman Foley Partners, 245 AD2d 155, 156 [1st Dept 1997].) Indemnity contracts "must be strictly construed so as to avoid reading unintended duties into them" that the parties did not intend to assume. (905 5th Assoc., Inc. v Weintraub, 85 AD3d 667, 668 [1st Dept 2011].) Unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant." (Correia, 259 AD2d at 65.)
In support of their contractual-indemnification claim, defendants allege that, "[Universal's] scope of work included the installation of waterproofing, flashing and/or rubber membranes around HVAC ducts on the roof of the subject Project" and "the installation of waterproofing, flashing and/or rubber membranes at all roof penetrations on the 8th floor roof of the subject Project." (NYSCEF No. 24 at 7.) The complaint also alleges that "the underlying incident occurred when a wheel of the baker's scaffold they were using . . . pierced through a membrane, flashing and/or waterproofing material installed around an HVAC duct" and that Universal installed that material. (See id. at 8.) As a result, plaintiffs' accident "arose out of and was connected with" the performance of Universal's work and Universal's acts and omissions on the subject project. (See id.)
In moving for summary judgment dismissing the claim, Universal argues that the indemnity provision is not triggered because (1) the accident did not arise out of or have any connection with any act or omission of Universal under its subcontract with Wonder Works; (2) [*11]the "arising out of" or "connect[ion] with" work requirement is not satisfied, where, as here, employees of Alabama were injured while performing work that Wonder Works subcontracted to Alabama; (3) the accident did not involve the performance of Universal's work; (4) the accident did not occur in or about the place where Universal was working or while Universal was working; and (5) none of Universal's property or personnel were in the area of the accident when it occurred. (See NYSCEF No. 190 at 11.)
In opposition, defendants argue that Universal's motion must be denied because Universal (1) contractually agreed that the safety of all workers on the roof—not just its ow workersn—was its "responsibility;" (2) was actively engaged in roofing construction at the time of the accident; and (3) was responsible for waterproofing and sealing the gap or space around HVAC ductwork and other infrastructure installed on the roof, like the Blueskin membrane that the Baker's scaffold fell through. (See NYSCEF No. 294 at 5.) This court agrees with defendants.
The indemnification provision requires Universal to indemnify Xin and Wonder Works, "[t]o the fullest extent of the law, . . . from and against all liability, demands, and actions . . . which arise out of or are connected with," (1) "[t]he performance of the Work by [Universal]," (2) "any act or omission of [Universal]," (3) "[a]ny accident . . . which happens, or is alleged to have happened, in or about the place while [Universal's] Work is being performed" (a) "while [Universal] is performing the Work" or (b) "while any of [Universal's] property, equipment or personnel are in or about such place or the vicinity thereof." (NYSCEF No. 30 at page 106 of the PDF.)
Contrary to Universal's assertion, it is not necessary for plaintiffs to have been engaged in the type of work covered by Universal's contract to fall within the broad scope of the indemnification provision. (See Urbina v 26 Ct. St. Assoc, LLC, 46 AD3d 268, 271-272 [1st Dept 2007].) It is therefore irrelevant whether plaintiffs were injured while performing work that Wonder Works subcontracted to Alabama.
Universal's scope of work pursuant to its contract with Wonder Works included, among other things, the installation of flashing, waterproofing and pavers on the roof of the Premises. (See NYSCEF No. 30 at page 17 of the PDF.) If Universal installed the temporary waterproofing covering the hole through which plaintiffs' scaffold fell, the accident could have arisen out of Universal's work. (See Wilk v Columbia Univ., 150 AD3d 502, 503 [1st Dept 2017].)
The disputed "act or omission" is the installation of the final layer of Blueskin waterproofing membrane around the ductwork, which covered the hole that plaintiffs' scaffold leg fell through. Universal claims that "[t]he "Blueskin" product allegedly depicted in Plaintiff's photos of the alleged accident location was not installed by Universal and was not used by Universal for its roofing work" and that "Wonder Works used Blueskin to keep the premises watertight."[FN3]
(NYSCEF No. 191 at ¶¶ 19-20.) Universal offers the deposition of Edward Power (Universal's project manager); he testified that Universal did not use Blueskin to waterproof mechanical vents coming out of roofs and that it could have been a contractor or a Wonder Works laborer. (See NYSCEF Nos. 184 at 49 & 215 at 76.) However, Power stated he did not observe anyone using Blueskin on the roof, so his answers are mere conjecture.
Defendants counter that "[o]ne of the trades, not general contractor Wonder Works, [*12]installed the Blueskin in the area where the incident occurred, possibly Universal."[FN4]
(See NYSCEF No. 295 at 7.) Defendants offer the deposition of Eric Brody (COO of Wonder Works), but like Power, Brody did not know who installed the Blueskin on the roof; he merely guessed that "it could have been any trade that was working there . . . but you can't tell who would have installed it." (See NYSCEF No. 214 at 239:6-15.) Thus, neither party has established who installed the Blueskin around the air duct opening on the roof.
As to Universal, it is unclear if its workers were present in the accident area on the day of the accident. Universal argues they were not on the roof and defendants argue that they were. Power testified that he visited the Premises "two to three times weekly" and that approximately five Universal workers were working at the site daily around the date of the accident. (See NYSCEF No. 271 at 19:17-19, 92:11-18.) Power was not on-site at the time of the accident. (See id. at 45:2-4, 45:22-46:4.) Universal had not completed its work on the roof at the time of the accident; the roof still needed "[a]t least one more layer of SBS roofing and waterproofing" as well as "drainage mat, insulation, filter fabric, and pavers." (Id. at 58:5-8, 70:21-71:5.) Power did not recall what work Universal was doing on the Premises, but when presented with a photo of the roof after the accident, Power testified that "[Universal] would have been waiting for other work to be completed prior to installing the finished roof." (Id. at 59:19-60:6.)
As Universal undertook to install roofing assembly/waterproofing on the "roofs" of the Premises, including "[t]emporary [w]aterproofing" (NYSCEF No. 30 at 17), and plaintiffs' accident occurred when its scaffold leg penetrated a type of temporary waterproofing on the roof, issues of fact exist as to whether the accident arose out of Universal's work or its negligence. (See McCullough v One Bryant Park, 132 AD3d 491, 493 [1st Dept 2024].) Since Universal has not eliminated factual disputes regarding its role in plaintiffs' accident, an award of summary judgment dismissing the contractual indemnification claim would be premature. Summary judgment on this branch of Universal's motion is denied.

Defendants' Claim for Common-Law Indemnification Against Universal
Universal also seeks summary judgment dismissing defendants' third-party action on the ground that defendants have proffered no evidence to establish that Universal is liable under common-law contribution and indemnification theories.
Common-law indemnification and contribution are predicated on a finding of negligence of the proposed indemnitor or contributor. (See Priestly v Montefiore Med. Ctr./Einstein Med. Ctr., 10 AD3d 493, 495 [1st Dept 2004] ["[C]ommon-law indemni[fication] . . . requires proof of some negligence that contributed to causing plaintiff's accident on the party of . . . the proposed indemnitor."].) Thus, a party moving for summary judgment dismissing common-law indemnification and contribution claims must demonstrate as a matter of law that it was not negligent or that it did not have authority to direct, supervise, or control the work giving rise to the injury. (See Keller v Rippowam Cisqua Sch., 208 AD3d 654, 655 [2d Dept 2022].)
Universal argues that it cannot be found liable under contribution or common-law indemnification theories, since no party has submitted any evidence that Universal was negligent [*13]or that its work was not in accordance with its subcontract. (See NYSCEF No. 190 at 4.) Additionally, Universal argues that it did not have any control or supervisory role over plaintiffs' work or worksite, it did not create the hole, it had no responsibility to cover holes or openings in the roof, and it did not have any notice of or ability to prevent or correct the condition that allegedly caused plaintiffs' accident. (See NYSCEF No. 190 at 3, 9, 10, 12, 13, 14.)
Universal fails to demonstrate affirmatively that it was free from negligence. Its argument is based only on (conclusory) assertions that defendants have proffered no evidence of its negligence. But the question is not whether defendants have provided evidence of negligence, but whether Universal has shown an absence of negligence. Universal has not made out even a prima facie showing that it was not negligent. (See Aur v Manhattan Greenpoint Ltd., 132 AD3d 595, 596 [1st Dept 2015] ["[D]efendants' bare conclusory assertion that they were not negligent is insufficient [to make a prima facie showing of entitlement to judgment as a matter of law]."]
Apparently, the hole in which the scaffold fell into was covered by a Blueskin waterproofing membrane. As the theory goes, that Blueskin membrane was insufficient to cover a hole safely and whichever entity installed the Blueskin was negligent in doing so. There is thus an issue of fact for the jury to decide about whether Universal workers, who were contractually responsible for roofing and waterproofing, installed that membrane. There is also an issue of fact whether the membrane was installed negligently or gave rise to and was a proximate cause of plaintiffs' accident and injuries.[FN5]

In that regard, Universal fails to demonstrate that its workers did not cause or create a dangerous condition by placing the temporary waterproofing surrounding the ductwork over the hole, or that its workers were not aware that such was done on their behalf. Universal was unquestionably on the Premises and had performed waterproofing on the subject roof. Although it is undisputed that Universal installed an initial layer of waterproofing on the roof, there is conflicting evidence in the record as to whether Universal also installed the "Blueskin membrane" that was put down on top of the SBS membrane around the ductwork.
In support of Universal's contention that its workers did not create the condition, Universal relies on Power's testimony. When shown a photo of the roof, Power claimed that Universal would have completed its work "months before." However, he admitted he did not actually recall when its work was completed on the subject roof or where Universal's workers were working at the time of the accident; and Universal has offered no evidence as to the last time its workers were on the roof and what work they completed. (See Ohadi v Magnetic Constr. Group Corp., 182 AD3d 474, 476 [1st Dept 2020].) Power's conjectures and suppositions lack corroborative documentation, such as the "subcontractor meeting minutes"[FN6]
or the progress [*14]reports filed by Universal to Wonder Works [FN7]
, to confirm Universal's claims of non-involvement. That is not enough. (See Weidtman v Tremont Renaissance Hous. Dev. Fund Co., Inc., 224 AD3d 488, 492 [1st Dept 2024].)
There is also conflicting testimony regarding Universal's responsibility for installing and ensuring the safety of the waterproofing on the roof. The Wonder Works/Universal subcontract contradicts Power's testimony and supports the notion that Universal was responsible for temporary waterproofing on the subject roof. This evidence, combined with Universal's lack of records demonstrating what work it completed and when, preclude it from establishing its prima facie case. (See Greenidge, 279 AD2d at 402-403 [denying summary judgment as subcontractor failed to eliminate any question regarding its involvement in the work where subcontractor's workers were on the scene and failed to offer records notwithstanding that the plaintiff could not identify the subcontractor, the moving party, as the negligent wrongdoer]; accord Guerra, 227 AD3d at 467 ["Defendant failed to establish its prima facie entitlement to judgment as a matter of law because it failed to submit with its moving papers an expert affidavit opining that the exterior step to enter the premises was not designed in a negligent manner, and that it complied with any rules or standards applicable at the time of construction."].)
On the record presented, there is no way to determine which entity or entities supervised, directed, or controlled the laborers that created the hole in the roof or were responsible for covering it with a waterproof membrane (i.e., Blueskin). Given this lack of clarity, Universal has not shown an absence of negligence in connection with the dangerous condition alleged to have caused plaintiffs' accident. Universal's motion to dismiss defendants' common-law indemnification and contribution claims is denied.

 Defendants' Claim for Breach of Contract for
Failure to Procure Insurance Against Universal
"[A] party moving for summary judgment dismissing a breach of contract claim for failure to procure insurance meets its prima facie burden by identifying the contract provision requiring the procurement of insurance and tendering the procured insurance policy that satisfies that requirement." (Cooper v Bldg 7th St. LLC, 231 AD3d 533, 534 [1st Dept 2024].) Universal contends that it complied with its obligation to obtain insurance coverage. (See NYSCEF No. 190 at 4.) But Universal has neither identified the contract provision nor offered any evidence demonstrating that it secured insurance as required under the contract.[FN8]
This branch of Universal's motion is therefore denied.

 Motion Sequence 006
In motion sequence 006, Creative moves under CPLR 3212 for summary judgment dismissing plaintiffs' Labor Law § 200 and common-law negligence claims, defendants' second third-party complaint against Creative, and all crossclaims against it.[FN9]
(See NYSCEF No. 193.)
Wonder Works retained Creative as their site-safety management. Creative was contractually required to provide full-time site safety management to perform specific duties including (1) conducting safety orientations, (2) performing daily walk-throughs to identify and maintain a safe site, (3) providing daily and weekly safety reports, and (4) monitoring all critical FDNY and DOB required compliance.[FN10]
(NYSCEF No. 209 at 1.)

 Defendants' Third-Party Claim for Common-Law Indemnification Against Creative
Creative moves for summary judgment dismissing defendants' common-law indemnification claim against it.
Liability for common-law indemnification and contribution may not be imposed against parties that are not negligent and do not exercise actual supervision and control over the injury-producing work. (McCarthy v Turner Constr., Inc., 17 NY3d 369, 377-378 [2011].)
Creative contends that it did not supervise or control plaintiffs' work and did not create or have notice of any dangerous condition. (See NYSCEF No. 196 at 3-5.) Creative claims that at the time of the incident, the accident site was under the complete supervision, custody, and control of Wonder Works (as general contractor overseeing the project on-site) and Alabama's foreman Rivera (directing and controlling plaintiff's work, in particular). (See id. at 5.) Creative also argues that it cannot be held liable in common-law indemnity because it was not negligent. (See id. at 6-9.) Last, Creative argues that since defendants cannot show that they were free from negligence, defendants' claims for common-law indemnification from Creative must fail. (See NYSCEF No. 310 at 3.)
Defendants argue the motion must be denied because there are issues of fact as to Creative's culpability under common law theories of indemnification. (See NYSCEF No. 297 at 3.) Defendants assert that Styagov, Creative's employee, was at the Premises daily; and they highlight the duty in the Wonder Works/Creative contract to "perform daily walk thrus to identify and maintain a safe site." (Id. at 4.) Defendants claim that Creative's daily task—and, by proxy, Styagov's task—was "not just to observe and report on perceived safety issues, but to effect necessary changes or require additional safety elements in the course of work at the 421 Kent project." (Id.) Defendants argue that plaintiffs' deposition testimonies afford ample evidence that Creative did, in fact, exercise supervision and control over plaintiffs' work. (See id. at 5.) In particular, they contend that deposition testimony of witnesses from multiple parties contradicts Creative's assertion that Styagov was neither on the roof nor authorized the use of the Baker's scaffold prior to the accident, and that this contradiction must be resolved by the trier of [*15]fact. (Id.)
Defendants claim that Styagov acted negligently because he should have (1) "prohibited the use of the Bakers scaffold, as he had testified was the rule for that jobsite"; and (2) "checked the roof surface under each of the four (4) supports of the scaffold, discovered the unsupported area covered with Blueskin and directed the workers to reposition the scaffold." (Id. at 5-6.) Defendants argue that Styagov inspected and maintained the Premises, including "the offending scaffold [that] was constructed and positioned over an alleged hazardous opening in the roof, but did so in a negligent manner by failing to detect and direct the workers in avoiding the roof penetration." (Id. at 6.)
This court agrees with defendants. Creative has not shown that it is entitled to summary judgment dismissing the claims against it in common-law indemnity and contribution. In particular, triable issues of fact exist about whether Styagov supervised, directed or controlled the injury producing work here, or otherwise had notice of a dangerous condition.[FN11]

Styagov testified that as a "site safety representative," his role was "[to] observe, report, and inform [the] general contractor who he is working with." (See NYSCEF No. 304 at 31:21-25, 34:3-5.) In that position, he said, he had no authority to stop workers from performing a task he perceived as hazardous. (See id. at 109:2-110:4.) However, plaintiff McFarlane identified a time when Styagov stopped him and other workers from working on the windows and instructed them to create areas to tie off their safety harnesses before proceeding further. (See NYSCEF No. 212 at 31:17-32:10.) Viewing the evidence in the light most favorable to the opposing party, this testimony suggests that Creative had the authority to stop work that was being performed in an unsafe manner. (See Martinez v 342 Prop. LLC, 89 AD3d 468, 469 [1st Dept 2011].)
Styagov also testified that his responsibilities did not include supervising workers or their work (see NYSCEF No. 218 at 49:3-8); and that no one informed him that the subject scaffold was going to be used on the date of the accident. (See id. at 13:2-6.) Both plaintiffs testified, however, that Styagov personally inspected and approved the scaffold assembly and positioning regularly, including on the day of the accident. (See NYSCEF No. 155 at 46:14-25, 51:17-25, 53:11-23, 70:6-20 & 212 at 53:16-54:23.) Holness testified that he was not permitted to begin working on a scaffold until Styagov had inspected the scaffold assembly and placement and approved him to begin working. (See NYSCEF No. 210 at 44:10-46:25.) These evidentiary conflicts give rise to a jury question about whether Styagov (and thus Creative) had supervisory authority over plaintiffs' work and exercised that authority.
Creative provides no evidence that might dispel the conflicts between the testimony of Styagov and plaintiffs. Nor does Creative offer evidence about how long the alleged unsafe condition existed or whether anyone notified Creative, or anyone else, that the unsafe condition [*16]needed rectifying.[FN12]

Given these factual conflicts, Creative is not entitled to summary judgment dismissing plaintiffs' Labor Law § 200 and common-law negligence claims.
With respect to defendants' common-law indemnification claim, Creative argues that defendants cannot prevail on this claim without providing evidence that they were free from negligence; and, therefore, that defendants' failure to provide that evidence on this motion warrants the grant of summary judgment to Creative. (See NYSCEF No. 310 at 2-3.) But that conclusion does not follow. True, a party seeking to recover in common-law indemnity must ultimately establish that the putative indemnitor (here, Creative) was negligent and that the would-be indemnitee (here, defendants) was free from negligence. But in attacking defendants' common-law indemnity claim on this motion, Creative has contended only that it was free from negligence—not also that defendants were negligent. Defendants have introduced evidence that, if credited by the fact-finder, would rebut Creative's argument that Creative was not negligent. No more is required at this stage to ward off dismissal of defendants' common-law indemnity and contribution claims against Creative.
Creative's summary-judgment motion is denied.

Motion Sequence 004
In motion sequence 004, J&Z moves under CPLR 3212 for summary judgment dismissing Centrifugal's fourth third-party complaint (NYSCEF No. 174), and all cross-claims against J&Z. (See NYSCEF No. 165.) Centrifugal cross-moves under CPLR 3212 for summary judgment (i) granting its claims for contractual indemnification and common-law indemnification and contribution against J&Z, and (ii) dismissing the claims and cross-claims brought against it by Universal (NYSCEF No. 173) and by defendants (NYSCEF No. 237). (See NYSCEF No. 226.)

Centrifugal's Claim for Contractual Indemnification Against J&Z
J&Z moves for summary judgment dismissing Centrifugal's claim for contractual indemnification against it. Centrifugal cross-moves for summary judgment in its favor on that claim. Each motion is denied.
J&Z contends that Centrifugal's cause of action for contractual indemnification and any crossclaims against it must be dismissed because the indemnity obligation in the Centrifugal/J&Z subcontract has not been triggered. (See NYSCEF No. 166 at 19.) J&Z argues that triggering the indemnity obligation would require a finding that the claim arose out of a "negligent act or omission" of J&Z or its sub-contractor, Metropolis. (See NYSCEF Nos. 166 at 18 & 309 at 4.) J&Z contends that the accident was not caused by any "negligent act or omission" of J&Z or Metropolis because J&Z's work did not involve opening the roof or installing any weatherproofing on the roof. (See NYSCEF No. 186 at 52:14-20, 54:7-10.) [*17]Moreover, J&Z argues, although Centrifugal retained J&Z to install the HVAC system on the Premises (see NYSCEF No. 188 at 1), J&Z subcontracted the work to Metropolis, which did the actual work on the roof (see NYSCEF No. 187 at 18:2-25).
In response, Centrifugal contends that the contract between Centrifugal and J&Z "requires J&Z to defend and indemnify Centrifugal for bodily injury arising out of work performed by J&Z." (See NYSCEF No. 288 at 7.) Therefore, "[t]o the extent that Universal, Wonder Works, the plaintiffs or any other entity allege that this incident arose out of HVAC work performed on site, J&Z has a duty to defend and indemnify Centrifugal related to those claims." (Id.)
Contrary to J&Z's contentions (see NYSCEF No. 309 at 4), the indemnification provision does not limit J&Z's indemnification obligation to J&Z's or Metropolis's "negligent act or omission." The indemnification provision is triggered by "the acts, omissions or negligence of [J&Z], a Sub-Contractor, anyone directly or indirectly employed by [J&Z] or anyone for whose acts [J&Z] may be liable." (NYSCEF No. 188 at 15.) Because the indemnification clause does not explicitly require a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant." (Correia, 259 AD2d at 65.)
J&Z is required to indemnify Centrifugal for "any and all claims" either "arising from or out of or resulting from the performance of the Work" or "arising from or out of any accident . . . in or about the Property" "but only to the extent caused by the acts, omissions or negligence of [J&Z], a Sub-Contractor, anyone directly or indirectly employed by [J&Z] or anyone for whose acts [J&Z] may be liable. (NYSCEF No. 188 at 15-16.) It remains to be determined whether plaintiffs' accident was caused by an act, omission, or negligence of J&Z or its subcontractor or anyone directly or indirectly employed by J&Z. J&Z failed to establish that it was not responsible for the injury-producing work. J&Z provided its subcontract without attaching the exhibit showing the scope of J&Z's contractual work. Absent that exhibit, this court cannot determine what work J&Z was responsible for.
The Centrifugal/J&Z subcontract requires J&Z, "[d]uring the execution of the work and at all times while present on the Project site working in any capacity whatsoever," to "reasonably protect all unfinished Work and materials on the Project site (as well as the work of others) and all tools, equipment and other apparatus used or to be used by Sub-Contractor or others in connection with the Project, f[r]om rain, water, frost and other elements and from all other kinds of damage." (NYSCEF No. 188 at 3.) This contradicts J&Z's assertion that it was not responsible for waterproofing the ducts it installed.
Moreover, although J&Z claims that it had no workers at the Premises and that Metropolis completed J&Z's work, J&Z has not established what work Metropolis did (or did not do) in the building as J&Z's subcontractor. J&Z does not submit a copy of the subcontract with Metropolis, nor provide an affidavit or deposition testimony from anyone with personal knowledge to corroborate J&Z's claims of non-involvement.[FN13]

As J&Z has not established prima facie that neither it nor Metropolis created the gap into which plaintiffs' scaffold fell, or installed the weatherproofing material around the ductwork [*18]through which plaintiffs' scaffold fell, the branch of J&Z's motion seeking dismissal of Centrifugal's contractual-indemnification claim is denied. (See Torres-Quito, 227 AD3d at 119.) Conversely, Centrifugal is not entitled to summary judgment in its favor on that claim because it has not provided evidence establishing prima facie that the injury-causing incident did arise from work performed by J&Z or Metropolis.[FN14]
The scanty record on this crucial issue precludes the grant of summary judgment either way.

 Centrifugal's Claims for Common-Law Indemnification and Contribution Against J&Z
With respect to Centrifugal's common-law indemnification and contribution claims against J&Z, both parties move for summary judgment on these claims. Both motions are denied.
Again, the record is unclear about whether J&Z performed HVAC-related work on the roof, whether J&Z (or Metropolis) negligently performed work on the roof, and whether any negligence by J&Z (or Metropolis) was a proximate cause of the underlying incident (and thus plaintiffs' injuries).
The deposition testimony of Centrifugal's employee, James Egan, and J&Z's employee, Gerald Campbell, are predominantly based on conjecture rather than personal knowledge of the project. (See Rodriguez v Board of Educ. Of City of NY, 107 AD3d 651, 651-652 [1st Dept 2013].) Even if the depositions were sufficient, they flatly contradict one another. For example, Egan testified that J&Z performed the HVAC installation at the Premises. (See NYSCEF No. 186 at 18:6-19, 65:13-23, 81:19-22, 84:14-19, 85:10-16.) Contrastingly, Campbell testified that Metropolis performed all the work at the Premises. (See NYSCEF No. 187 at 18:2-6; 20:5-7; 27:13-15; 41:10-21.) Egan averred that he witnessed anywhere from six to 24 J&Z laborers onsite and that J&Z's foreman created daily logs and submitted them to Wonder Works. (See NYSCEF No. 186 at 38:3-15, 40:10-15, 68:12-69:3, 88:14-19.) Campbell claimed that J&Z had no workers at the Premises, kept no records concerning the project and that Metropolis never sent J&Z daily logs. (See NYSCEF No. 187 at 22:15-19, 23:12-15, 28:18-30:4, 32:11-18, 43:21-44:3.) Neither party has produced daily logs for the project to show when their workers last worked at or near the accident site. (See Wright v Emigrant Sav. Bank, 112 AD3d 401, 401 [1st Dept 2013].)
Contrary to J&Z's claim that "the testimony was conclusive that any openings to the roof would have been done by other contractors," Campbell was never asked about cutting openings in the roof; and when asked about filling openings, he testified that he did not know because he had never installed ductwork before. (See id. at 21:23-22:9.) J&Z's conclusory assertions are insufficient to establish J&Z was not negligent nor that the adequacy of the HVAC installation [*19]was unconnected to plaintiffs' accident. At a minimum, the conflicting testimony of Egan and Campbell creates triable issues of fact about who performed the HVAC installation work, who retained supervisory authority over the injury-producing work, and what work was performed. (See Weidtman, 224 AD3d at 492.)
With respect to Centrifugal's request for summary judgment, Centrifugal would have to show, as a matter of law, not only that it was not negligent but also that J&Z was negligent. (See Winkler v Halmar Intl., LLC, 206 AD3d 458, 461 [1st Dept 2022] ["To establish a claim for common-law indemnification, the one seeking indemnity must prove not only that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident but also that it was not guilty of any negligence beyond the statutory liability."].) For the reasons set forth above, Centrifugal has not met that burden.

 Centrifugal's Claim for Breach of Contract for Failure to Procure Insurance Against J&Z
The Centrifugal/J&Z subcontract requires J&Z to obtain commercial general liability insurance and name Centrifugal as an additional insured. (NYSCEF No. 188 at 23-25.) J&Z claims that this cause of action is barred by the statute of limitations and must be dismissed. (See NYSCEF No. 166 at 19-20.)
The statute of limitations for breach of contract in New York is six years. (See CPLR 213 [2].) Generally, the statute of limitations for breach of contract begins to run at the time of breach, even if damages do not accrue until a later date and even if the complaining party is unaware of the breach. (See Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993].) A cause of action for breach of contract for failure to procure contractually required insurance accrues when the unsatisfied procurement obligation first attaches. (See Port Auth. Of NY & N.J. v Brickman Group Ltd., LLC, 181 AD3d 1, 11 [1st Dept 2019].)
Centrifugal's breach of contract claim accrued when J&Z purportedly failed to obtain the requisite insurance covering it as an additional insured. As the parties entered into the agreement in October 2014, Centrifugal's breach of contract claim accrued no later than October 2014. (See Wright, 112 AD3d at 402.) Since more than six years have elapsed since the parties entered into the agreement, J&Z's motion for summary judgment dismissing this claim is granted.

Universal's Claims for Common-Law Indemnification and Contribution Against Centrifugal
Centrifugal cross-moves for summary judgment dismissing Universal's common-law indemnification and contribution claims against it.
Where "[a] party [is] sued solely for its own alleged wrongdoing, rather than on a theory of vicarious liability, [it] cannot assert a claim for common law indemnification." (63rd & 3rd NYC LLC v Advanced Contr. Solutions, LLC, 223 AD3d 447, 448 [1st Dept 2024] [internal quotation marks omitted].)
Here, the only claims asserted against Universal are based on Universal's alleged negligence or its actual supervision of the injury-producing work—not based on a theory of vicarious liability of Universal for the conduct of another party. (See NYSCEF No. 172.) Universal is therefore precluded from seeking recovery on the basis of common-law indemnification. (See 63rd & 3rd NYC, 223 AD3d at 448.) Centrifugal's request for summary judgment dismissing Universal's common-law indemnity claim against it is granted.
It would be premature, however, to dismiss Universal's contribution claim, because fault [*20]has not yet been determined and apportioned among the various defendants. (See Wing Wong, 95 AD3d at 709-710.) Contribution distributes loss among tortfeasors by requiring joint tortfeasors "to pay a proportionate share of the loss to one who has discharged their joint liability." (Rosado v Proctor & Schwartz, Inc., 66 NY2d 21, 23 [1985].) But here, issues of fact remain about which defendants, if any, caused or contributed to plaintiffs' injuries.

Defendants' Claim for Contractual Indemnification Against Centrifugal
Centrifugal cross-moves for summary judgment dismissing defendants' contractual and common-law indemnification and contribution claims against it. When, as here, a motion for summary judgment is unopposed, a court will grant the motion if the movant demonstrates prima facie that no genuine issues of material fact remain. (See Walsam 316 v 316 Bowery Realty Corp., 226 AD3d 628, 630 [1st Dept 2024].)
Centrifugal maintains that the indemnification claims against it must be dismissed because there is no evidence that it was responsible for the safety of work being performed on the roof at the time of accident. In particular, Centrifugal contends that it was not responsible for cutting the openings for the ducts on the roof or for installing waterproofing around openings in which ducts were placed at roof level. (See NYSCEF Nos. 229 at 6-8 & 288 at 3-5.) Rather, Centrifugal claims, Wonder Works and Creative were responsible for overall site safety on the roof on the date of the accident, Universal was responsible for ensuring that any waterproofing work was performed in a safe manner, and Alabama was responsible for the safety of its employees. Further, Centrifugal argues that it did not cause or create a dangerous condition because there is no evidence suggesting that it created the opening where the duct was placed, or that Centrifugal had a duty to maintain the opening. (See NYSCEF No. 229 at 8-9.) Centrifugal also contends that the photographic evidence of the accident shows that Centrifugal's work, installing the HVAC ducts, had been completed days prior.
The branch of Centrifugal's motion seeking dismissal of the contractual indemnification claim is denied as premature. The Wonder Works/Centrifugal subcontract provided by Centrifugal references an "Exhibit D" containing Centrifugal's insurance and indemnification requirements, which is not attached to the document. The exhibit does include a "hold harmless" agreement mirroring that in the Wonder Works/Universal subcontract.[FN15]
(NYSCEF No. 233 at 132.) Under the agreement, Centrifugal agreed to indemnify and hold harmless Xin and Wonder Works "from and against all liability . . . and actions . . . which arise out of or are connected with, or any act or omission of [Centrifugal]." (Id.)
Centrifugal's claim (and Egan's deposition testimony) that Centrifugal was not [*21]responsible for cutting openings into the roof or for waterproofing the area around the ductwork is contradicted by terms in the Wonder Works/Centrifugal subcontract.[FN16]
This conflicting evidence presents a triable issue of fact. (See Tracy v 29-33 Convent Ave. Hous. Dev. Fund Corp., 179 AD3d 612, 613 [1st Dept 2020].) Here, plaintiffs' accident occurred when the leg of the scaffold on which they were working penetrated an allegedly improperly covered opening in the roof and the scaffold tipped over. If Centrifugal's subcontractors were responsible for installing weatherproof covering for the ductwork on the roof, or if they created and left a hazardous condition (i.e., the gap) then Centrifugal is liable. This court cannot determine whether this contractual responsibility was passed on to the subcontractors because the subcontracts provided do not include the scope-of-work exhibit. (See NYSCEF No. 188.) Centrifugal has not provided any daily work logs from its subcontractors to confirm when their work was completed.
Even if Centrifugal, as it claims, had no workers at the Premises and did not itself complete any of the work, under the Wonder Works/Centrifugal subcontract Centrifugal remains liable for the acts, omissions, and negligence of its sub-subcontractors. (NYSCEF No. 233 at 11.) As discussed above, it cannot yet be determined whether conduct of either of those sub-subcontractors contributed to the underlying accident. It is therefore premature to dismiss the contractual indemnification claim.
Defendants' Claims for Common-Law Indemnification and Contribution Against Centrifugal
Centrifugal is not entitled to summary judgment dismissing defendants' third-party claims for common-law indemnification and contribution against it. Whether Centrifugal or one of its subcontractors was at fault in the underlying accident cannot be determined at this stage: Issues of fact exist with respect to Centrifugal's role in covering openings on the roof and whether any act or omission on its part caused or contributed to plaintiffs' injuries. (See One Bryant Park v Permasteelisa Cladding Tech., Ltd, 189 AD3d 584, 585 [1st Dept 2020].) And a question of fact exists about whether Centrifugal, through one of its subcontractors, had the actual authority to control the injury-producing work. (See Douglas v Roseland Dev. Assoc., LLC, 225 AD3d 467, 468 [1st Dept 2024] [denying summary judgment dismissing common-law [*22]indemnification and contribution claims due to material issues of fact as to whether negligence by subcontractor, acting through another subcontractor, caused or contributed the dangerous condition on which plaintiff tripped and fell].)
The Wonder Works/Centrifugal subcontract requires Centrifugal to "at all times provide sufficient, safe and proper inspection of [its] work in the field." (NYSCEF No. 233 at page 9 of the PDF.) No such language exists in the Centrifugal/J&Z subcontract to indicate that responsibility was passed on to J&Z, and no party has claimed that they were responsible for creating or covering up openings in the roof or for waterproofing around the ductwork on the roof. Centrifugal might have remained responsible at least for supervising the injury-producing work. If that is the case, then Centrifugal would have had more than mere general supervisory authority, at least with respect to its subcontractor J&Z.
In short, Centrifugal has not established as a factual matter which party, out of all the parties involved in this case, was responsible for installing the waterproofing covering the opening, who supervised that installation, and whether and to what extent negligence in the installation process caused or contributed to plaintiffs' accident. As there remain determinative triable issues of fact as to whose work created a dangerous condition (and under what circumstances), summary judgment is premature. (See Torres-Quito, 227 AD3d at 119; Nenadovic v P.T. Tenants Corp., 94 AD3d 534, 535 [1st Dept 2012].) Additionally, it would be premature to dismiss defendants' common-law indemnification and contribution claims, because it has yet to be determined whether defendants were at fault and thereby foreclosed from being indemnified.

Motion Sequence 008
In motion sequence 008, Metropolis moves under CPLR 3212 (a) for summary judgment dismissing the fifth third-party complaint filed against it by J&Z.[FN17]
(See NYSCEF No. 314.) Universal opposes the motion.[FN18]
(See NYSCEF No. 362.) J&Z opposes the motion. (See NYSCEF No. 371.)
In support of its motion, Metropolis submitted the affirmation of Byron Plummer (owner of Metropolis). The affirmation attaches (1) the J&Z/Metropolis subcontract (omitting the exhibit describing the work to be completed), (2) Metropolis' commercial general liability insurance policy with AmTrust North America/Wesco Insurance Company, and (3) copies of daily contractor reports assertedly prepared by Metropolis each day. (See NYSCEF No. 349.) 
As an initial matter, Universal argues that Plummer's affirmation should be disregarded as not made on personal knowledge and that the attached contractor reports are inadmissible because they have not been shown to be Metropolis business records. (See NYSCEF No. 362 at 14.) This court agrees.
Plummer's affirmation does not provide a basis for his representations—whether on personal knowledge, from a review of Metropolis's records, or otherwise. (See NYSCEF No. 349 at 2.) Nor do the particular statements in the affirmation that "Metropolis was not . . . responsible for, nor did it make, any roof penetrations" and that "[t]his temporary membrane [the Blueskin] was not installed by Metropolis" (id. at ¶¶ 5, 9) identify the basis on which the statements are made.
Further, the affirmation's statements with respect to the Metropolis contractor reports do not lay a foundation for the admissibility of those reports as business records. Plummer does not represent that he has personal knowledge of Metropolis's record-keeping practices. He does not represent that it was Metropolis's regular practice to generate daily contractor reports, nor that the particular reports at issue here were made at the time of the work they memorialize nor within a reasonable time thereafter. Moreover, Plummer's statement in his affirmation that Metropolis generated the reports is contradicted by multiple aspects of the documents themselves, which indicate that they were instead generated by Centrifugal.[FN19]
(See NYSCEF No. 349 at 133-161.)
In short, neither Plummer's affirmation itself, nor the attached daily contractor reports, may be properly considered by the court on this motion.

 J&Z's Claim for Contractual Indemnification Against Metropolis
Metropolis moves for summary judgment dismissing J&Z's claim for contractual indemnification against it. J&Z's claim is based on an indemnification provision in the J&Z/Metropolis subcontract:
"To the fullest extent permitted by law, Sub-Contractor shall indemnify, defend and hold harmless . . . Contractor, Construction Manager and other "Indemnities" . . . from and against any and all claims, . . .
(a) arising from or out of or resulting from the performance of the Work (including, without limitation, . . . against all claims from and/or liability to persons or property suffered in any manner whatsoever by reason of the Work), provided that such Claims are attributable to bodily injury, . . . but only to the extent caused by the acts, omissions or negligence of Sub-Contractor, a Sub-Contractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable . . .
(c) arising from or out of any accident or event in or about the Property, provided that such Claims are attributable to bodily injury, . . . but only to the extent caused by the acts, [*23]omissions or negligence of Sub-Contractor, a Sub-Contractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable."
(See NYSCEF No. 349 [J&Z/Metropolis Subcontract] at 15-16 [emphasis added].)
Metropolis advances several arguments in support of this summary-judgment request. First, Metropolis claims the indemnification provision is not triggered because Metropolis was not negligent. Second, Metropolis contends, even if a finding of negligence is not required, that the following evidence establishes that plaintiffs' claim did not arise out of Metropolis's work: (1) Egan's testimony that Centrifugal was not responsible for providing waterproof coverings for "piping and ductwork located outside of the building at this job site"; (2) Campbell's testimony that any waterproofing around rooftop ducts would have been performed by the "roofing guys"; (3) Plummer's affirmation providing it was not Metropolis' responsibility to ensure that, after it installed the HVAC ducts, the sides/edges of the roof were flush with same and that the subject temporary membrane was not installed by Metropolis; and (4) "item # 237 of the subject "BID PACKAGE/SCHEDULE OF VALUES" in the Wonder Works/Universal subcontract, which provides that Universal would "furnish & install all flashing and waterproofing for all permanent materials that penetrate the roofing assembly."" (See NYSCEF No. 315 at 4.)
As discussed below, Metropolis's arguments are unpersuasive.
That Metropolis claims it was not negligent does not preclude indemnification under the subcontract's indemnity provision. Provisions conditioning indemnity upon claims "arising out of" the performance of the contracted work do not require proof of the indemnitor's negligence or fault. (See Brown v Two Exch. Plaza Partners, 76 NY2d 172, 178 [1990].) Metropolis is contractually obligated to indemnify J&Z for claims to persons suffered "in any manner whatsoever by reason of" its work or accidents on the Premises caused by its acts, omissions, or negligence. Metropolis has not established that the indemnity provision was inapplicable to the facts of this case.
As discussed above, Egan and Campbell's testimony is largely conjectural and not offered on personal knowledge. Metropolis has not offered evidence that might establish that Universal, rather than Metropolis, in fact installed the waterproofing at issue here. With respect to the scope of Metropolis's own work, the copy of the J&Z/Metropolis subcontract offered by Metropolis on this motion omits the contract's scope-of-work-related exhibits. (See NYSCEF No. 349.) And for the reasons discussed above, the statements in Plummer's affirmation about the extent of Metropolis's contractual responsibilities are not entitled to any weight on this issue. Absent details of the work to be performed, this court cannot determine the scope of Metropolis's duties or whether the accident here "ar[ose] from or out of or result[ed] from the performance" of those duties. (Id. at 15-16.) Metropolis has thus not shown, even prima facie, that J&Z's indemnity claim under the subcontract fails as a matter of law.

 J&Z's Claim for Common-Law Indemnification Against Metropolis
Metropolis also moves for summary judgment dismissing J&Z's common-law indemnification claim against it.
Universal argues that this summary-judgment motion is premature under CPLR 3212 (f) because they have not yet obtained necessary discovery from Metropolis—i.e., the deposition of Plummer or someone else with personal knowledge of Metropolis's work on the project. This court agrees.
Universal contends that an important unanswered question in this case is whether a proximate cause of plaintiffs' was Metropolis's launching a force of harm by removing a plywood cover from the roof ductwork, installing the subject ductwork while leaving a gap/hole in the roof that plaintiffs' scaffold leg fell into, failing to cover up the resulting hole/gap created by Metropolis' work, and then failing to warn against the resulting foreseeable safety issue. (See NYSCEF No. 362 at 13.)
Universal has shown that this factual question is material and that information relevant to answering it remains exclusively in Metropolis's possession. Among other outstanding questions, the parties cannot identify (1) whose work created the hole, (2) when it occurred, and (3) which party put the plywood covering and Blueskin membrane covering over the hole that allegedly led to plaintiffs' injury. There is a crucial gap in the record as it stands between Metropolis's installing the HVAC ductwork in the roof and plaintiffs performing their work on the roof—namely, which entity was responsible for and did install the temporary cover around the openings adjacent to the ductwork, and who oversaw that entity's work. As Wonder Works subcontracted the HVAC installation to Centrifugal, which then subcontracted to J&Z, which then subcontracted that work to Metropolis, further discovery concerning Metropolis's work, and the supervision of that work, is warranted. Further, Metropolis has not produced a witness with knowledge for deposition; nor answered discovery requests served on it by Centrifugal (see NYSCEF No. 313). In these circumstances, granting summary judgment to Metropolis would be premature under CPLR 3212 (f). (See Voluto Ventures, LLC v Jenkins & Gilchrist Parker Chapin LLP, 44 AD3d 557, 557 [1st Dept 2007] [describing standard for denying summary judgment as premature].)
Accordingly, this branch of Metropolis's motion is denied without prejudice as premature.[FN20]

Motion Sequence 007
Plaintiffs' Motion to Sever or Dismiss the Fifth Third-Party Complaint
In motion sequence 007, plaintiffs move under CPLR 603 to sever the fifth third-party complaint filed by J&Z or, in the alternative, under CPLR 1010 to dismiss the fifth third-party complaint. (NYSCEF No. 238.)
Under CPLR 603, a court may sever either a claim or an issue for a separate trial "[i]n furtherance of convenience or to avoid prejudice." (CPLR 603.) CPLR 1010 affords the court with discretionary authority to dismiss or sever a third-party action without prejudice where the controversy "will unduly delay the determination of the main action or prejudice the substantial rights of any party." (CPLR 1010.) However, courts should exercise that discretion "sparingly," particularly where "complex issues are intertwined, albeit in technically different actions." (Shanley v Callanan Indus., Inc., 54 NY2d 52, 57 [1981]; accord Rothstein v Milleridge Inn, 251 AD2d 154, 155 [1st Dept 1998] [internal citation omitted] ["To avoid the waste of judicial resources and the risk of inconsistent verdicts, it is preferable for related actions to be tried together such as in a tort case where the issue is the respective liability of the defendant and the [*24]third-party defendant for the plaintiff's injury."].) 
In determining whether to sever or dismiss a third-party action, courts consider whether "(1) the third-party action is based on the same issues of law and fact as the main action; (2) there were unreasonable delays in starting the third-party action; (3) plaintiff in the main action is prejudiced by delays due to extended discovery; (4) prejudice to plaintiff in keeping the third party in the action is stronger than prejudice to defendant if the third party is removed." (Marbilla, LLC v 143/145 Lexington LLC, 2013 WL 577806, 2013 NY Slip Op 30280[U] [Sup Ct, NY County 2013], affd 116 AD3d 544 [1st Dept 2014].) When the main action and the third-party action have "a common nucleus of facts, severance requires a showing that a joint trial will result in prejudice or substantial delay." (Vecciarelli v King Pharm., Inc., 71 AD3d 595, 596 [1st Dept 2010], [internal quotation marks omitted].) 
Plaintiffs contend that "the extraordinary delays by J&Z in commencing the action for indemnification militates toward the severance of the newly filed third-party action." (See NYSCEF No. 239 at 9.) Plaintiffs highlight that (i) the fifth third-party action was commenced more than seven years after the commencement of the original action, (ii) plaintiffs have already filed their Note of Issue and statement of readiness for trial, and (iii) Metropolis has conducted no discovery. (See id. at 10-13.) In opposition, J&Z contends that its complaint against Metropolis was not untimely filed. (See NYSCEF No. 299.) Defendants also oppose the motion, asserting that (i) plaintiffs have failed to meet their burden on this motion because they have not established any prejudice if severance is denied, (ii) there are common issues of fact and law in the main action and fifth third-party action warranting a consolidated trial, and (iii) severing the fifth third-party action would trigger confusion and added costs for all parties, and create the opportunity for conflicting verdicts, precluding severance of the fifth third-party complaint. (See NYSCEF No. 307.)
Here, trial of the claims will entail much of, or all, the same evidence and many of the same witnesses. (See Defreitas, 168 AD3d at 542.) Indeed, the factual and legal issues involved in the main complaint and the fifth third-party action are inextricably linked and intertwined so that a joint trial is preferable and more efficient for judicial economy and ultimate resolution of this action. As argued by defendants, Metropolis is the only party that installed ductwork and may have information crucial to resolving issues of fact in the remaining actions. Moreover, the existence of cross-claims and the potential prejudice to the remaining defendants' ability to conduct discovery weighs against severance. (See Turner v Owens Funeral Home, Inc., 140 AD3d 632, 633 [1st Dept 2018].) The owners', general contractor's and various subcontractors' liability are interconnected; evidence as to one's liability or lack thereof implicates the liability of the others. (See Range, 150 AD3d at 516 [denying severance where issues of law and fact between the two actions were "intertwined, since the inspection of the job side by the second third-party defendants was integral to plaintiffs' liability claims."].)
Denial of severance will avoid duplicative litigation in which J&Z seeks to apportion liability for damages to plaintiffs to fifth third-party defendant based on claims of indemnification and contribution that implicate the same evidence and legal theories as the main action and other third-party actions. (See Marbilla, LLC, 116 AD3d at 544.)
To be sure, plaintiffs are correct that courts have severed third-party actions filed late in the underlying action so as not to unduly delay the prosecution of the underlying action. Here, though, the (fifth) third-party action at issue was filed less than two months after plaintiffs filed their note of issue and statement of readiness and only twelve days after J&Z completed its [*25]deposition.[FN21]
Moreover, although they assert that keeping the fifth third-party action joined to the rest will result in prejudice and substantial delay, plaintiffs do not provide a sufficient supporting basis for this assertion. Although the court is sympathetic to plaintiffs' complaint that discovery in the main action is complete, and discovery in the fifth third-party action remains, that fact alone does not warrant severance.
Metropolis may avail itself of all the disclosure conducted in the main action and prior third-party actions and has not articulated what further disclosure it needs in the fifth third-party action.[FN22]
The only further discovery identified by the remaining defendants is to depose a witness from the fifth third-party defendant Metropolis. As long as the fifth third-party action does not unduly delay the main action and other third-party actions, the fifth third-party action will not prejudice plaintiffs' action. (See CPLR 1010; Marbilla, LLC, 116 AD3d at 544.) The parties may complete additional discovery in the fifth third-party action "while this case makes its way up the trial calendar." (Range v Trustees of Columbia Univ. in N.Y.C., 150 AD3d 515, 516 [1st Dept 2017].)
As Metropolis is already in possession of all prior disclosures, if Metropolis believes that discovery to be insufficient, it may move for leave of court to obtain further discovery. The court notes, though, that any requests for further discovery, particularly discovery from plaintiffs, must be supported by substantial justification.
Accordingly, it is
ORDERED that plaintiffs' motion seeking summary judgment in their favor on liability under Labor Law § 240 (1) against 421 Kent, Xin, and Wonder Works (mot seq 003) is granted; and it is further
ORDERED that the branches of J&Z's motion seeking summary judgment dismissing Centrifugal's contractual indemnification, common-law indemnification, and contribution claims against it (mot seq 004) are denied; and it is further
ORDERED that the branch of J&Z's motion seeking summary judgment dismissing Centrifugal's breach-of-contract claim against it (mot seq 004) is granted; and it is further
ORDERED that the branches of Centrifugal's cross-motion seeking summary judgment in its favor on its claims for contractual indemnification, common-law indemnification, and contribution against J&Z (mot seq 004) are denied; and it is further
ORDERED that the branch of Centrifugal's cross-motion seeking summary judgment dismissing Universal's common-law indemnification claim against it (mot seq 004) is granted; [*26]and it is further
ORDERED that the branch of Centrifugal's cross-motion seeking summary judgment dismissing Universal's contribution claim against it (mot seq 004) is denied; and it is further
ORDERED the branches of Centrifugal's cross-motion seeking summary judgment dismissing the contractual indemnification, common-law indemnification, and contribution claims brought against it by 421 Kent/Xin/Wonder Works (mot seq 004) are denied; and it is further
ORDERED that Universal's motion for summary judgment dismissing the contractual indemnification, common-law indemnification, contribution, and breach-of-contract claims brought against it by 421 Kent/Xin/Wonder Works (mot seq 005) is denied; and it is further
ORDERED that the branches of Creative's motion seeking summary judgment dismissing the contractual indemnification, common-law indemnification, and contribution claims brought against it by 421 Kent/Xin/Wonder Works (mot seq 006) are denied; and it is further
ORDERED that the branch of Creative's motion seeking summary judgment dismissing plaintiffs' Labor Law § 200 and common-law negligence claims (mot seq 006) is denied; and it is further
ORDERED that plaintiff's motion to sever or dismiss the fifth third-party complaint brought by J&Z against Metropolis (mot seq 007) is denied; and it is further
ORDERED that the branch of Metropolis's motion seeking summary judgment dismissing J&Z's contractual-indemnification claim against it (mot seq 008) is denied; and it is further
ORDERED that the branch of Metropolis's motion seeking summary judgment dismissing J&Z's common-law indemnification claim against it (mot seq 008) is denied without prejudice.
DATE 1/3/2025

Footnotes

Footnote 1:The situation in Wolf v Ledcor Constr. Inc., cited by plaintiffs, closely resembles the facts presented here. There, the scaffold plaintiff was standing on tipped when the wheel of the scaffold fell into a drain hole in the floor. The wheel of the scaffold was placed on top of a plastic curing blanket that had been applied over the newly installed concrete floor and was stretched over the drain hole. (See id. at 928.) The accident occurred when the wheel ripped through the plastic curing blanket and fell into the hole. (See id.) The Fourth Department held that the worker's injuries were caused by an elevated risk and the placement of the scaffold over the improperly covered drain hole was a proximate cause of the accident. The statute was violated because the safety device was not properly placed, even though it was the worker who misplaced the scaffolding that he fell from. (See id. at 928-929.)

Footnote 2:Moreover, the temporary membrane cover on the hole constituted an inadequate safety device because it was not secured or tagged in a way to identify it at the time of the accident. (See Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 450 [1st Dept 2013] ["Plaintiff established a prima facie violation of the statute by showing that the plywood cover on the hole was an inadequate safety device because it was not secured at the time of the accident."].)

Footnote 3:Universal has neither submitted nor pointed to any evidence proving that Wonder Works used the Blueskin on the Premises. 

Footnote 4:However, when asked whether Universal would temporarily cover roof penetrations, Power responded "[i]f directed by Wonder Works, perhaps." (NYSCEF No. 271 at 80:8-16.)

Footnote 5:No party to this action has submitted expert testimony on this matter.

Footnote 6:These meeting minutes are referenced in Power's deposition. (See NYSCEF No. 271 at 109:13-110:4.) They are also referenced in Brody's deposition. (See NYSCEF No. 214 at 141:6-143:21, 153:3-157:5.) Absent the original documents, the statements regarding their contents are hearsay. 

Footnote 7:These progress reports are referenced in Power's deposition. (See NYSCEF No. 271 at 31:18-32:9.)

Footnote 8:Indeed, no party has submitted the Universal/Wonder Works contract with "Exhibit D" outlining Universal's insurance-related obligations. As a result, this court cannot determine what those obligations were and whether Universal breached them.

Footnote 9:Although Creative's notice of motion states that Creative is seeking summary judgment dismissing plaintiffs' complaint as a whole, the supporting memorandum of law addresses only plaintiffs' Labor Law § 200 and negligence claims. (See NYSCEF No. 196 at 4-5.)

Footnote 10:The language of the contract implies that there exists a more detailed description of Creative's obligations in "Exhibit A" thereto; but Creative has not provided the court with this exhibit. (See NYSCEF No. 209 at 1.)

Footnote 11:Creative's contractual duties and authority alone are insufficient to establish that Creative should be treated as having directed, supervised, and controlled the work which resulted in plaintiffs' injuries. (See Naughton v City of NY, 94 AD3d 1, 11 [1st Dept 2012 ["[A] party's . . . [contractual] authority to supervise the work and implement safety procedures is not alone a sufficient basis for requiring common-law indemnification."] [internal quotation marks omitted].) "Rather, liability can only be imposed against a party who exercises actual supervision of the injury producing work." (Id. [emphasis in original].)

Footnote 12:Styagov testified that he was present while the ductwork was being installed but could not remember any specifics of what he observed and when, nor whether he saw the temporary waterproofing being applied around the ductwork. (See NYSCEF No. 161 at 110:15-113:25.)

Footnote 13:On motion sequence 008, Metropolis provides a copy of the subcontract with J&Z (see NYSCEF No. 349); but as discussed below in the court's analysis of that motion, that copy does not attach the contractual exhibit that describes the work to be completed by Metropolis for J&Z.

Footnote 14:If Centrifugal had made out that prima facie showing, it would not be foreclosed from obtaining summary judgment on this claim by the possibility, discussed further below, that its own negligent acts contributed to (but were not the sole cause of) the injury-causing incident. When, as here, an indemnity clause provides for indemnification to the fullest extent permitted by law, conditionally granting Centrifugal summary judgment in contractual indemnity to the extent that it is not negligent would be consistent with General Obligation Law § 5-322.1. (See Higgins v TST 375 Hudson, LLC, 179 AD3d 508, 511 [1st Dept 2020]; Williams v City of NY, 74 AD3d 479, 480 [1st Dept 2010].)

Footnote 15:Although the signature line in both copies of the hold-harmless agreement are blank, "an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." (Flores v Lower E. Side Serv. Ctr., Inc., 4 NY3d 363, 369 [2005].) Here, the parties signed the main agreement, which physically incorporates and references the hold harmless agreement, and the hold-harmless agreement is initialed in the lower right corner by both parties. (See Ajche, 171 AD3d at 414 [1st Dept 2019].) Moreover, as neither party raised issue with the lack of signature, they are deemed to have admitted the agreement's authenticity. (See Vitucci v Durst Pyramid LLC, 205 AD3d 441, 444-445 [1st Dept 2022].)

Footnote 16:In its bid package, Centrifugal agreed to the requirement that "[n]o cutting or chopping shall be done without prior approval of the Construction Manager," and that "[t]his Sub-Contractor is and shall be responsible for all cutting, chopping, patching to perform this work." Centrifugal's response is "Yes." (NYSCEF No. 233 at 76.)

Centrifugal also agreed to the requirements that (i) "[t]his Sub-Contractor will provide all insulation work for his HVAC work"; and (ii) "[t]his Sub-Contractor is responsible for including weatherproof covering of all piping and ductwork located outside of building interiors, roof levels, setbacks etc," with "[a]ll materials, thickness, coverings, etc.," to "conform as specified." (NYSCEF No. 233 at 77 [emphases added].)

And in response to the bid requirement that "[a]ll cutting, chasing, chopping, patching, core drilling required for performance of this trade shall be this Subcontractor's responsibility," Centrigual agreed that "[c]utting will be done by this contr[a]ctor if their layouts are incorrect." (NYSCEF No. 233 at 82 [emphases added].)

Footnote 17:Metropolis's supporting motion papers argue in favor of severing the fifth third-party action from the main action under CPLR 603. However, Metropolis does not seek this relief in its notice of motion. The request for severance is therefore not properly before the court, and is denied on that ground. 

Footnote 18:This court disagrees with Metropolis's assertion that Universal has no standing to oppose Metropolis's motion to dismiss J&Z's action against it, given that Universal has both asserted cross-claims against J&Z and Metropolis and brought a third-party action against J&Z (see NYSCEF Nos. 368, 330).

Footnote 19:For example, the reports, which are not signed, are printed on Centrifugal letterhead, list "Centrifugal Ass Group" as the subcontractor, and "Wonder Works" as the contractor. (See NYSCEF No. 349 at 133-161.) The only document that is signed, an "Authorization for Extra Work," was signed by the "Centrifugal Associates Group, LLC Foreman." (See id. at 142.)

Footnote 20:For this reason, the court does not reach the remainder of Metropolis's arguments in support of this summary-judgment request.

Footnote 21:Plaintiffs filed their Note of Issue and Certificate of Readiness for Trial on July 4, 2023. (See NYSCEF No. 249.) On August 10, 2023, this court issued a status conference order in which it noted "[a]ny motions for summary judgment must be filed within sixty (60) days from the completion of J & Z's deposition." (See NYSCEF No. 250.) J&Z completed their deposition on August 17, 2023. (See NYSCEF No. 251.) J&Z commenced a fifth third-party action against Metropolis on August 29, 2023. (See NYSCEF No. 252.) On January 4, 2024, Metropolis joined issue through service of its answer with cross-claim to the fifth third-party complaint. (See NYSCEF No. 286.)

Footnote 22:Metropolis has already availed itself of all depositions and further disclosure that has taken place to date in its motion for summary judgment.